## ROBERTS *v.* STATE

[No. 142, September Term, 1958.]

*Decided April 15, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Mark A. Singerman,* for appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Edwin F. Nikirk, State's Attorney for Frederick County,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

Roberts, an indigent defendant, represented in this Court by counsel appointed by the Court pursuant to § 15A of Article 5 of the 1957 Code, 1958 Supp., appeals from his conviction on a charge of assault and battery. He urges that paragraphs b and c of Maryland Rule 723 [1] relating to a defendant's right to counsel in the trial court were not complied with and that because of the lack of counsel an ingredient of unfairness entered into the proceedings resulting in his conviction and incarceration and that he was thus denied due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

Roberts was convicted of assault and battery committed on June 29, 1958, against one Carl W. Snook. Roberts had stolen an automobile from Snook about a year earlier, had been sentenced to a year in prison for that offense and attacked Snook a few days after his release. This attack was clearly an act of revenge. During it, the defendant said that Snook was responsible for his having been imprisoned and threatened to kill Snook.

In considering the contentions based upon Rule 723, we shall look at some of the docket entries and other material appearing in the record.

---

1. Rule 723 b and c read as follows:
"b. *Assignment of Counsel.*
    If the defendant appears in court without counsel, the court shall advise him of his right to obtain counsel. Unless he elects to proceed without counsel, the court shall, in all capital cases or other serious cases, assign counsel to defend him.
"c. *Record to Show Compliance.*
    The record shall affirmatively show compliance with this Rule."

The third docket entry reads as follows: "1958 July 18—Traverser informed of his right to have Counsel appointed. Traverser in open Court freely waives right."

The fourth docket entry, which is a wholly separate paragraph, begins with the same date and continues: "Plea of 'Not Guilty' entered by Traverser and issue and case heard and tried before the Court * * *."

The transcript of proceedings (page 1) opens as follows: "(The Court) 'Now we will take up the case of State v. Lloyd R. Roberts. Roberts, I asked you at the outset whether you had an attorney. You told me you didn't have one.'

(The Defendant) 'No, sir.'

(The Court) 'And you do not want one, is that correct?'

(The Defendant) 'Yes, sir.'

(The Court) 'Let the record show that plainly. * * * '"

The appellant's position appears to assume that the above passage from the transcript is all that there was relating to paragraphs b and c of Rule 723, and that it fails to show compliance therewith and that the third docket entry is inconsistent with the transcript.

We find no necessary inconsistency. (Cf. *Ford v. State,* 12 Md. 514, 548.) The transcript clearly shows that there had been a previous discussion of the matter of counsel between the court and the defendant. No motion appears to have been made in the trial court, and there was none in this court, directed towards the correction of an error in the third docket entry, if there were one; nor is there any certification that what appears in the transcript is all that was said between the court and the defendant relating to counsel for the defendant. Of course, the trial court is the proper court in which such a correction or certification might be made. *Hansel v. Collins,* 180 Md. 100, 103, 23 A. 2d 1. Cf. *Merchant v. State,* 217 Md. 61, 141 A. 2d 487.

It is true that an erroneous docket entry may be corrected by the court in which the error occurred. *Weighorst v. State,* 7 Md. 442, 450; *Hansel v. Collins, supra.* See also *Ford v. State, supra.* However, it has been held that until corrected, the docket entries must be taken as true (*State, Use of Sprigg v. Jones,* 8 Md. 88, 95), and the importance of the docket en-

tries has recently been reaffirmed in *Baltimore Luggage Co. v. Ligon,* 208 Md. 406, 118 A. 2d 665. Cf. *Carter v. Illinois,* 329 U. S. 173, 177-179, involving recitals contained in the judgment showing the explanation by the trial court to the accused of his right to counsel and to a trial by jury and of the degree of proof which would have to be produced against him on a plea of not guilty. The defendant elected to proceed without counsel and pleaded guilty. His conviction was upheld by a divided court.

It is the duty of the clerk, under Code (1957), Article 17, § 1, to "make proper entries of all proceedings in the court of which he is clerk." We think that there is no sufficient showing that the clerk failed to do so in the present case. On the third docket entry as it stands, there was full compliance with Rule 723 b and c.

The comparative simplicity of this case will be considered in connection with the question of due process.

The appellant contends that the absence of counsel to represent him at the trial caused an element of unfairness to enter into the proceedings resulting in his conviction and so deprived him of his rights under the Fourteenth Amendment.

Under *Betts v. Brady,* 316 U. S. 455, it is not constitutionally necessary that counsel for indigent defendants be appointed in all state prosecutions. *Betts v. Brady* was a 5-4 decision, but it has never been overruled and, on the contrary, has been recognized repeatedly in subsequent decisions of the Supreme Court. The rule for which the appellant contends has been applied in other cases, such, for example, as *Uveges v. Pennsylvania,* 335 U. S. 437, and *Moore v. Michigan,* 355 U. S. 155, and still more recently in *Cash v. Culver,* 358 U. S. 633, 79 S. Ct. 432; but as the latest of these cases shows, each case must be considered on its own facts.

Here the accused was twenty-nine years old at the time of the trial, and he was regrettably familiar, through personal experience, with the conduct of criminal proceedings. The facts of the case were simple. The charge was simple and it was expressed in readily understandable terms in a brief information of about five or six typewritten lines. A copy had been furnished to the defendant and he had, by petition, waived

indictment and requested prompt trial before the court. (This was doubtless to expedite the trial, as he was held in jail.) Likewise, the evidence to establish the charge was simple. The defense was also simple—an alibi, in support of which the defendant and two other witnesses summoned for him testified. Such a trial does not present questions beyond the ken of a layman, as did the questions of evidence in *Cash v. Culver, supra.*

We find no force in the appellant's claim that he was prejudiced by the absence of counsel because evidence of his conviction for a previous offense was admitted before the defendant had taken the stand. Such evidence came in primarily as a part of the complaining witness' account of what the defendant said to him during the assault, and all of such evidence as came in prior to the defendant's taking the stand was in substance the same as what the defendant said at the time of the attack. It was clearly admissible as bearing upon his motive for committing the offense. *Wilson v. State,* 181 Md. 1, 26 A. 2d 770; *King v. State,* 190 Md. 361, 372, 373, 58 A. 2d 663. The absence of counsel to make an unsustainable objection could hardly have prejudiced the defendant.

The defendant also claims that he should have been warned that if he took the stand, his past criminal record could be used against him. It seems from the colloquy which followed the verdict of guilty, when the court asked the defendant if he had any reason why he should not then be sentenced, that the court discounted the defendant's testimony heavily because of his past criminal record.

The evidence was, we think, more than sufficient to support the defendant's conviction, if the defendant had not testified at all. When he took the stand, he exposed himself to having his criminal record brought out. Because of that record, the judge discounted the defendant's credibility greatly; but, as he stated, he did not find the defendant guilty on his record. There is no claim that the evidence of prior offenses was not admissible when the defendant took the stand. The testimony of the witnesses whom he called to establish his defense of an alibi did not place him elsewhere than at the place of the assault at such a time as to create a substantial conflict, if any

at all, with the testimony of the prosecuting witness. It would be speculation unsupported by the testimony or by reasonable inferences therefrom to suppose that the presence of counsel could have avoided the dilemma with which the defendant was confronted. In these circumstances we do not think that the lack of counsel caused any element of unfairness to enter into the defendant's conviction on the question of whether to testify or not.

The defendant contends that his mental condition was such —and was recognized by the trial judge as being such—that he was incapable of defending himself even in this simple case, and hence that the lack of counsel rendered his conviction void under the decision in *Wade v. Mayo,* 334 U. S. 672. In that case the Supreme Court said, "There are some individuals who, by reason of age, ignorance or mental capacity, are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity is purely personal and can be determined only by an examination and observation of the individual. Where such incapacity is present, the refusal to appoint counsel is a denial of due process of law under the Fourteenth Amendment." (334 U. S. 684.)

The appellant claims that although he might not have been insane in the sense of being incapable of standing trial, he lacked the capacity to stand trial without the benefit of counsel. *Massey v. Moore,* 348 U. S. 105. In support of this argument the appellant points to the remarks of the trial judge in the colloquy with regard to sentence to the effect that he was certain that there was something wrong which caused the defendant to do the things shown by his past record, which included several convictions for assault and two for larceny. There was also a comment after the defendant still insisted that he was not guilty of this crime in which the trial judge said: "I am firmly convinced in your mind you probably feel that way, but I think that there is something wrong with you. I think you need some mental treatment." In accordance with these views the court sentenced the defendant to three years in the House of Correction and then directed that he be sent to the Patuxent Institution for examination pursuant to the Defective Delinquent Law (Code (1957), Art. 31B).

In his final comments as to why he thought there was "something wrong" with the defendant, the trial judge said: "* * * I don't think you do these things intentionally. I think you must have an impulse or something of that nature, * * *." We think that this is what the judge was referring to in the comments above quoted and that this is why he felt that the defendant "should have a mental examination" and why he was going to sign an order for the defendant's examination at the Patuxent Institution to find out what is wrong.

Section 5 of Article 31B of the 1957 Code defines a "defective delinquent" as "an individual who, by the demonstration of persistent aggravated anti-social or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require * * * confinement and treatment, * * *." What the trial judge had in mind in speaking of "an impulse or something of that nature" appears to us quite clearly to have been "emotional unbalance" rather than "intellectual deficiency." The two are different. Thus in *Palmer v. State,* 215 Md. 142, 137 A. 2d 119, a person was found to be a defective delinquent because of emotional unbalance, not because of intellectual deficiency. His I. Q. tests indicated that his level of intelligence was average, and the question narrowed down to one of emotional unbalance. In the instant case we find nothing in the record to indicate any lack of mental capacity on the part of the defendant to stand trial without counsel. It is not to be supposed either that the trial judge thought otherwise on the basis of his observation of the defendant or that his comments so indicate. The result of the defendant's examination at the Patuxent Institution is not in the record and is not before us.

On the record before us the judgment is affirmed.

*Judgment affirmed.*