# ROBERTS *v.* DIRECTOR OF PATUXENT INSTITUTION

[App. No. 54, September Term, 1960.]

644

*Decided July 10, 1961.*

Before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

BRUNE, C. J., delivered the opinion of the Court.

This application for leave to appeal from the denial of an application for relief under the Uniform Post Conviction Procedure Act (Code (1960 Supp.), Art. 27, §§ 645A-645J, the "PCPA") presents several questions. The applicant, Lloyd R. Roberts, is now held at the Patuxent Institution pending trial and determination of whether or not he is a defective delinquent within the meaning of the Defective Delinquent Laws (Code (1957), Art. 31B, as amended.) He was tried and convicted in the Circuit Court for Frederick County on July 18, 1958, on a charge of assault and battery committed on June 29, 1958, and was sentenced to three years' imprisonment in the House of Correction, accounting from June 30th, the date of his arrest. Roberts had been convicted of stealing an automobile from the victim of his 1958 assault about a year earlier and had been sentenced to a year's imprisonment. The assault occurred very shortly after his release and, as we said in affirming the 1958 conviction from which he appealed, the "attack was clearly an act of revenge." *Roberts v. State,*

219 Md. 485, 487, 150 A. 2d 448. Because of several prior offenses,—assault and larceny, including the theft of the automobile above mentioned,—Judge Schnauffer at the time of imposing sentence directed that Roberts be sent to Patuxent for examination, evidently with the thought that he might receive mental treatment which would help him to overcome his unfortunate tendencies. (219 Md. at 491-492.) We rejected Roberts' contention that the court's comments indicated that the court thought him incapable of standing trial for the offense charged without the aid of counsel.

While Roberts' appeal was pending in this Court (our opinion was filed on April 15, 1959), Roberts was examined at Patuxent and on November 18, 1958 a report of the Institution was forwarded to the State's Attorney for Frederick County and on December 10, 1958 it was filed with the Circuit Court for that County. (Code (1957), Art. 31B, § 7). That report states in part:

> "He [Roberts] is in need of psychiatric treatment and rehabilitation in order to make a future adjustment in society. He can be classified as a defective delinquent under the terms of the law, because he has exhibited extreme emotional unbalance as well as a propensity toward aggravated criminal behavior. His commitment to the Patuxent Institution is therefore recommended."

The hearing on this report required by § 8 of Art. 31B was greatly delayed. The court seems to have assumed that the State's Attorney's office was taking care of the matter. So far as we can tell from the record before us nothing was done by the State's Attorney's office towards bringing the matter to actual trial until October, 1960; and even then action was initiated only after prodding by the Patuxent Institution. There are in the record copies of letters dated April 21 and August 15, 1960, from the Director of Patuxent requesting action, to which no replies appear to have been received. The first of these letters was addressed to Mr. Barrick, who had been State's Attorney in November and December, 1958. His term expired at the end of the latter

month. He was succeeded by a Mr. Nikirk, who resigned in less than a year, and he, in turn, was succeeded by the present State's Attorney, to whom the letter of August 15 was addressed. That letter called attention to the then tentative date of expiration of Roberts' sentence, which was September 27th. Finally, on September 21st, the Director wrote to Judge Schnauffer calling attention to the expiration date, referring to an opinion of Judge McLaughlin (apparently in the *Caple* case hereinafter referred to), and urging that some proper disposition be made of Roberts' case. This letter apparently got results, and on October 11, 1960, the State's Attorney notified Roberts that his case would be heard on October 20th.

In March, 1960, Roberts had taken the initiative himself to the extent of asking that he be examined, pursuant to § 7 (b) of Art. 31B, by a psychiatrist of his own choice. Under § 7 (b) the State pays the reasonable cost of such examination. The psychiatrist whom he selected was not licensed to practice in Maryland, and he was therefore advised that though he could be examined by this psychiatrist, he, and not the State, would have to pay for his services. This sign of activity did nothing, so far as appears, to bring the case to a hearing.

On October 11, 1960, the State's Attorney for Frederick County sent Roberts a letter stating that his defective delinquency hearing was scheduled for October 20, 1960 and that the court would appoint counsel for him and that he had the right to select a psychiatrist of his own choice, provided the psychiatrist had qualified to practice in Maryland, and that the State would pay the psychiatrist's fee. Roberts, on October 16, 1960, notified the State's Attorney that he desired Miss Elsbeth Levy, of Baltimore, to represent him at the defective delinquency proceeding.

However, on October 7, 1960 Roberts, without informing the authorities in Frederick County, had filed a petition in the Circuit Court for Washington County for a writ of habeas corpus. When this action became known in Frederick County the defective delinquency hearing there scheduled for October 20, 1960 was postponed, pending the decision of Judge

McLaughlin in the Circuit Court for Washington County on the petition for a writ of habeas corpus. By letter dated October 25, 1960, Roberts requested Judge McLaughlin to "suspend any action on [his] writ of habeas corpus until [he] can get in touch with [his] lawyer" and by letter dated October 31, 1960, Miss Elsbeth Levy, the petitioner's counsel, requested Judge McLaughlin to pass an order which would enable "Roberts' Writ of Habeas Corpus [to] be entertained as a proceeding under the Post Conviction Procedure Act, * * * as provided in Article 27, Section 645B (b) * * *." In conformity with this request, Judge McLaughlin (who had expressed the opinion that the question of jurisdiction to try Roberts in the defective delinquency case could be determined either in that case or in Post Conviction Procedure Act proceedings) ordered that Roberts' petition for a writ of habeas corpus be entertained as a Post Conviction Procedure Act proceeding and that the case accordingly be referred to Frederick County, where petitioner's conviction took place. On November 23, 1960, petitioner waived his right to have his petition for post conviction relief heard by a judge other than Judge Schnauffer, the judge who sat at his trial and who convicted him. Judge McLaughlin having forwarded all the papers in the case to Frederick County, a post conviction hearing was held before Judge Schnauffer on December 6, 1960. Miss Levy, the petitioner's court appointed counsel, represented him at the hearing and filed a brief in his behalf, which was received by Judge Schnauffer on December 19, 1960. After carefully considering the petitioner's contentions, Judge Schnauffer, on December 20, 1960, ordered that Roberts' petition be dismissed. Application for leave to appeal to this Court was thereafter filed in the Circuit Court for Frederick County by the petitioner's counsel.

In his application petitioner contends, as he did below, that since his sentence has expired, giving him credit for good conduct and industrial time while confined at Patuxent, he is being illegally detained at Patuxent and that he cannot, after the expiration of his sentence, be subjected to a proceeding to determine whether or not he is a defective delinquent. The court below, however, determined in effect that

the petitioner was not being illegally detained at Patuxent and that our decision in *Eggleston v. State,* 209 Md. 504, 121 A. 2d 698 would permit his being tried on the question of his alleged defective delinquency, despite the expiration of his sentence.

Because of what he deems to be a conflict between the decision of Judge Schnauffer in this respect and an opinion of Judge McLaughlin on this problem, the Attorney General has recommended that leave to appeal be granted in this case.

The opinion of Judge McLaughlin which was thought to conflict with the decision of the lower court in the instant case, was rendered by him in the case of *Robert Caple v. Director, Patuxent Institution,* No. 1231-B Misc. Docket No. 2, in the Circuit Court for Washington County. In that opinion, Judge McLaughlin, though dismissing Caple's petition for a writ of habeas corpus as premature because it was filed before the expiration of his sentence, stated that if a hearing on the petitioner's alleged defective delinquency were not held prior to the expiration of the sentence, he would order that the petitioner be released from Patuxent. Though so concluding, Judge McLaughlin recognized in a subsequent case (*John W. Heil v. Director, Patuxent Institution,* No. 1330-A Misc. Docket No. 2, in the Circuit Court for Washington County), that under the holding of *Eggleston v. State,* 209 Md. 504, 121 A. 2d 698, "a hearing on the issue of defective delinquency could be held after the original sentence had expired." He expressed a like view in a letter to counsel for Roberts in the instant case in which he further stated that under the *Eggleston* case he "would hold the Petition for the Writ was not well taken." (In this letter he also pointed out that an application for leave to appeal could be filed in a Post Conviction Procedure Act case, but not in a habeas corpus proceeding.)

It is clear from the statements made by Judge McLaughlin subsequent to his opinion in the *Caple* case that he interprets our decision in *Eggleston v. State, supra,* in a manner wholly consistent with the interpretation given it by the court below. A conflict in the decisions of the Circuit Courts, therefore, does not exist as a basis for granting leave to appeal in this case.

In *Eggleston v. State, supra,* at page 511, Section 6 (e) of the provisions of Article 31B of the 1957 Code dealing with defective delinquents was construed by this Court to permit continuing jurisdiction, by the sentencing court, over a person sent to Patuxent by it for examination "until the purposes to be served by the examination were accomplished, regardless of the expiration of the original sentence." Though other aspects of the *Eggleston* decision have been altered by subsequent legislative enactments, this construction of Section 6 (e) has remained unaltered by acts of the Legislature or subsequent decisions of this Court. When the Legislature intended to impose a time limit based upon release, it has done so clearly with regard to the time for examination at Patuxent under Section 6 (c), which provides that no person shall be ordered to Patuxent for examination "if the said person has been released from confinement for the particular crime or offense of which he was convicted."

Jurisdiction of the sentencing court to try Roberts on the issue of defective delinquency, notwithstanding the expiration of his term, was the principal question decided in this case in the Circuit Court. It seems to have been assumed by the court that under the *Eggleston* case, jurisdiction to try Roberts on that issue carried with it power to hold him in detention until that question was tried. There are, however, some differences between the *Eggleston* case and the present case. There the "arraignment" under Article 31B took place before the earliest date on which the criminal sentence would have expired if time spent in Patuxent and allowances for good behavior were credited against it, the trial was set for one day before such expiration, and postponement to a later date was granted at the request of counsel for the alleged defective delinquent. Thus, there are differences between the situation in *Eggleston* and that here as to trial after the (asserted) date of expiration of sentence. Furthermore, since it was held in the *Eggleston* case that under Article 31B as it then stood, the alleged defective delinquent was not entitled to credit against his criminal sentence for time spent in the Patuxent Institution (as to which the law was amended promptly after the *Eggleston* decision), his sentence had not expired when

he was tried on the issue of defective delinquency. Consequently, the comments of this Court on remand to the Institution between the date of expiration of sentence and the date of the trial were not necessary to the decision.

Because of the differences between *Eggleston* and this case, the decision in *Eggleston* might not be controlling with regard to Roberts' detention after the date of expiration of his sentence and before trial. We agree with the statement of Judge McLaughlin in his opinion in the *Caple* case that:

> "The purport and intention of Article 31B relating to Defective Delinquents is certainly not to send Defendants to the Institution for examination and to forget all about them. The Defendant is entitled to have the issue of Defective Delinquency tried and tried within a reasonable time after the Institution has had reasonable time to make its findings."

As Judge McLaughlin pointed out in that case, and as is evident from the record in this, Dr. Boslow, the Director of the Patuxent Institution, is in full accord with this view, and the delay here cannot be laid at the door of the Institution. The report of the Commission to Study and Re-Evaluate the Patuxent Institution, of which Chief Judge Roszel C. Thomsen of the United States District Court was Chairman, has also expressed its concurrence with Judge McLaughlin's view. (See p. 19 of the Report.)

In the instant case the applicant, Roberts, was about to be tried on the issue of defective delinquency when his habeas corpus petition, later converted into a Post Conviction proceeding, was filed. The question of jurisdiction to proceed with the defective delinquency case was raised by Roberts' petition, and by consent of both parties trial on the defective delinquency issue was postponed pending the determination of that jurisdictional question. Whether or not, on this state of facts and in the light of *Eggleston,* Roberts was entitled to his release pending trial of the defective delinquency case, is a question which we do not decide because of the inappropriateness of this proceeding which we discuss below. We may comment that we also agree with Judge McLaughlin's obser-

vation in the *Heil* case quoted with approval by Judge Schnauffer in this case, to the effect that the problem of detention after the expiration of sentence and before trial seems appropriate for legislative consideration.

To avoid the delay incident to relitigation of the jurisdictional question determined below, we express our view on that subject. We think that the jurisdiction of the sentencing court to try the defective delinquency case, notwithstanding the expiration of Roberts' criminal sentence, is definitely settled by the *Eggleston* case. As to that, as we have already said, we find no disagreement between judicial circuits of the State.

We think, however, that a PCPA proceeding is not appropriate either to challenge in advance the jurisdiction of the sentencing court to try the defective delinquency case or to test the legality of the applicant's detention while awaiting such trial. The basic jurisdictional provisions of the PCPA are stated in § 645A. So far as here relevant they are:

> "Any person convicted of a crime and incarcerated under sentence of * * * imprisonment, including those confined * * * under Article 31B of the Code, title 'Defective Delinquents,' who claims that the *sentence or judgment* was imposed in violation of the Constitution of the United States or the Constitution or laws of this State, or that the court * * * was without jurisdiction to impose the *sentence,* or that the *sentence* exceeds the maximum authorized by law, or that the *sentence* is otherwise subject to collateral attack upon any ground of alleged error heretofore available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy, may institute a proceeding under this subtitle to set aside or correct the *sentence* * * *." (Italics supplied).

§ 645B of the PCPA does not enlarge jurisdiction under the Act. It authorizes a trial judge, "unless it appears that the remedy under this subtitle [the PCPA] is inadequate or ineffective to test the legality of the applicant's detention," to determine that an application for a writ of habeas corpus should

be treated as an application under the PCPA, and with the consent of the applicant, to pass an order to that effect. It also authorizes the trial judge to direct the transmission of the application and any other pertinent papers to the court in which the conviction occurred. (Under § 645C that is the court in which a PCPA application is to be filed.) If consent is not given, the habeas corpus petition is to be heard as such.

Here we find no attack on the validity of any *judgment or sentence* under which the applicant is held. He did appeal, as above noted, from the conviction and sentence under which he was incarcerated and as a result of which he was sentenced to Patuxent for examination, but his conviction was affirmed. With allowance for time off for work and good behavior, his *sentence* of imprisonment had expired and he was no longer subject to it. He was under no sentence or order for commitment under Article 31B, such an order being apparently regarded as equivalent to a sentence for purposes of the PCPA. We may also comment that the applicant is not held for trial for any crime. (See the analogy thereto mentioned in *Eggleston*. Proceedings under the Defective Delinquent Act are civil in nature. *Eggleston v. State, supra; Blizzard v. State,* 218 Md. 384, 147 A. 2d 227.) Roberts' continued incarceration after the expiration of his sentence was and remains a proper subject for inquiry on a petition for a writ of habeas corpus; but since it is not attacked for any alleged infirmity in the judgment under which he was sentenced, or in the sentence itself, nor even in the order by which he was transferred to the Patuxent Institution for examination, it did not present any question cognizable under the PCPA, as we read that Act.

Accordingly, application for leave to appeal is denied, without prejudice, however, to the right of the applicant to file a new petition for a writ of habeas corpus or by appropriate proceedings to reinstate his original petition for such a writ which was converted into an application under the PCPA.

*Application for leave to appeal denied, without prejudice to the right of the applicant to seek relief by habeas corpus proceedings.*