**Carlos Houston DAUGHERTY, Appellant,**

**v.**

**STATE OF MARYLAND, Director, Patuxent Institution and Patuxent Authorities, Appellees.**

**No. 10109.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 1, 1965.

Decided Jan. 20, 1966.

Jacob B. Davis, Baltimore, Md. (Court-assigned counsel) [Weinberg & Green, Baltimore, Md., on brief], for appellant.

David T. Mason, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

Release from the Patuxent Institution of Maryland on habeas corpus was asked of the District Court by Carlos Houston Daugherty. A State convict, he had been committed to the Institution under the Maryland Defective Delinquent Act.[1] His petition was denied.

Now on appeal he renews the attack upon his detention on the same ground as

1. Annotated Code of Maryland, Article 31B, prior to amendment effective June 1, 1963, Laws of Maryland 1963, ch. 283. For a careful analysis of the Act and its operation, see Sas v. State of Maryland, 334 F.2d 506 (4 Cir. 1964) with opinion by Judge Bell.

in the trial court. He concedes that under the statute he was subject to trial for commitment to the Institution as a defective delinquent, had the proceedings for that purpose been seasonably concluded. However, he submits, his term of imprisonment as a convict expired 80 days before he was adjudged a defective delinquent and his intervening detention in the Institution invalidated the adjudication. His argument is that the extended detainment was unauthorized by the Act and was so long that it is presumed to have voided the trial or hearing as lacking in due process. In stating the prejudice he suffered from the delay and continuing confinement, Daugherty alludes to the additional stay in the atmosphere of the Institution as conducive to delinquency and also as hindering the preparation of his defense.

We sustain the judgment of the District Court refusing to order his discharge.

Abridged, the procedure under the Maryland Act is that after sentence the Court, sua sponte or on request of designated officials, may order the convict to be examined by the Institution to ascertain if in fact he is a defective delinquent within the definition of the Act. The order, addressed to the Department of Correction when, as presently, it has the custody of the convict, directs his delivery to the Institution and an examination of him there. If the report of the examination indicates delinquency, the convict is summoned before the sentencing court and informed of the substance of the report and of his right to a hearing thereon. The hearing or trial is to determine whether under the law the convict is a defective delinquent. The determination is made by the judge alone, or at the instance of the convict, by a jury.

If the result of the hearing is a finding that the convict is a defective delinquent, he is committed to the Institution "for an indeterminate period", with conditional suspension of his original sentence. The adjudication, hearing and commitment have been declared to be civil and not criminal in character. See Blizzard v. State, 218 Md. 384, 147 A.2d 227 (1958).

Daugherty was found guilty of assault on May 5, 1961 in the Criminal Court of Baltimore City, sentenced to two years (counted from April 22, 1961) in the Maryland House of Correction and immediately ordered to Patuxent for observation. The transfer was made on July 1, 1961.

A report finding him to be a defective delinquent was filed with the Court by the Institution on March 21, 1962, and on April 6, 1962 he was given a preliminary hearing—"arraigned"—in the sentencing court on the report. Although the State here denies that Daugherty's term was reduced by good behavior and industrial labor credits, we assume arguendo that he was entitled to the allowances and, as he avers, his time expired on November 14, 1962. He had not been adjudged a defective delinquent prior to that date, but he was again "arraigned" upon the report on November 23, 1962. Unable to obtain a lawyer himself, the Court on November 28, 1962 appointed counsel for him.

Thereafter in two appropriate applications in the State courts, he sought release through habeas corpus from his detention beyond November 14, 1962. Not until February 4, 1963 was he adjudged a defective delinquent and committed to Patuxent. The last habeas corpus petition was denied on February 5, 1963, the day following the adjudication. Denial was based on the premise that as he had then been adjudged a delinquent the validity of his interim detention had become moot. The dismissal of the applications for release was affirmed. Daugherty v. Director, 235 Md. 662, 202 A.2d 593 (1964). After unsuccessfully pursuing all State remedies open to him he filed the present petition in the District Court.

Our approval of the Act in Sas v. State of Maryland, supra, 334 F.2d 506 (1964) necessarily included approval ex facie of

§ 6(e) which, before its amendment in 1963, read as follows:

> "Jurisdiction of defendant.—The court which last sentenced the defendant, whether or not the term of court in which he was sentenced has expired, shall retain jurisdiction of the defendant for the purpose of any of the procedures specified in  *  *  [the Act]." [2]

The hiatus between the ending of the criminal term on November 14, 1962 and resumption of the Patuxent proceedings —commencing on November 23, 1962 and concluding on February 4, 1963—did not, Maryland's highest court has said, ipso facto invalidate the Court's custody of him. Nor did it vitiate the adjudication. These were the interpretations of § 6(e) by the Court of Appeals of the State on Daugherty's appeal. Daugherty v. Director, supra, 235 Md. 662, 202 A.2d 593 (1964). It was presaged, albeit obiter, in Roberts v. Director, 226 Md. 643, 172 A.2d 880 (1961) and Eggleston v. State, 209 Md. 504, 121 A.2d 698 (1956). The reasoning was that as the court under the Act had continuing jurisdiction of the defendant's person despite the service of his sentence, the court had the power to restrain him for such further time as was reasonable to permit completion of the civil proceedings. See also Bullock v. Director, 231 Md. 629, 190 A.2d 789 (1963).

Accepting this construction of the Act, as we must, our duty is to see if the result is to impinge upon the Constitutional privileges of Daugherty. We find no impingement.

While the delay in holding the defective delinquency hearing is not explained in the record, we cannot say that it was so prolonged as in itself to amount to deprivation of liberty without due process or that it in any degree affected the fairness of his hearing. The Patuxent officials complied with the requirement of the Act that the report of his examination be filed within six months of Daugherty's original commitment. He was apprised of the proposed delinquency inquisition at least six months before the expiration of his criminal term, thus affording him ample opportunity to arrange a defense. The last 30 days of the interval between the end of the criminal imprisonment and the hearing was a delay granted on Daugherty's request for a continuance.[3] No actual prejudice to a just hearing appears, and the circumstances do not warrant the presumption of injury argued by Daugherty.

The State's dilatoriness is nonetheless to be condemned. It is in the pattern deplored by Chief Judge Brune in Roberts v. Director, supra, 226 Md. 643, 172 A.2d 880 (1961). The burden is, and certainly should be, on the State to excuse its laggardness, rather than upon the inmate to show resultant detriment. Strange to say, the State presently seems oblivious of its neglect. Continuance of this attitude could easily lead to such grave Constitutional infringements as to defeat accomplishment of the aims of the Defective Delinquent Act.

The order of the District Court will not be disturbed.

Affirmed.

2. As mentioned in footnote 1, supra, the Act was amended in 1963, effective June 1, 1963. The amendment explicitly stated that the detention in Patuxent might continue until the termination of the delinquency inquiry "without regard to whether or not the criminal sentence to which he was last sentenced has expired". As Daugherty's term began prior to the effective date of the amend-

ment, the State recognizes that the amendment is not applicable to his case.

3. See Bullock v. Director, supra, 231 Md. 629, 190 A.2d 789 (1963) where the Maryland Court of Appeals felt it appropriate to mention that the delay in the delinquency hearing was due in part to the defendant's own legal maneuvers.