Abraham J. Gellinoff, J.
This is an application for discharge from custody, brought by a writ of habeas corpus to test the legality of relator’s detention pursuant to a warrant issued by the Governor of the State of New York on a requisition from the Governor of the State of Maryland demanding relator’s extradition to that State to be tried for the crime of escape.
Relator, Robert D. Dickie, was indicted on March 20, 1958 in the State of Maryland and charged with the crime of larceny after trust. Upon his plea of guilty he was sentenced on April 1, 1958 by the Circuit Court of Montgomery County to two years’ imprisonment in the Maryland House of Correction, the sentence to commence as of February 23,1958, the day he entered Montgomery County Jail.
While serving this sentence, a petition was filed and a court order obtained for relator’s examination for commitment to Patuxent Institution as a “ defective delinquent ’ ’ pursuant to article 31B of the Annotated Code of the Public General Laws of Maryland. Section 5 of article 31B defines a “defective delinquent ” as an “ individual who, by the demonstration of persistent aggravated anti-social or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotion unbalance, or both, as to clearly demonstrate an actual danger to society só as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment ’ ’.
Following such examination a hearing on the question of relator’s defective delinquency was held on April 2, 1959, and relator was found to be a defective delinquent and committed to Patuxent Institution for an indefinite period of confinement. Relator completed serving his two-year sentence on February 23, 1960, but continued to be detained at Patuxent Institution as a defective delinquent. On July 3, 1965 he escaped. The affidavit of the State’s Attorney, which accompanies the demand of the Governor of the State of Maryland, recites that the extradition is sought in good faith and with the sole intent to return relator to Patuxent Institution to complete his sentence and to prosecute him for the crime of escape therefrom.
The surrender by one State to another, upon proper demand, of an individual accused or convicted of an offense outside its own territory and within the territorial jurisdiction of the other, is governed by the United States Constitution which declares in *345 article IV (§ 2, cl. 2) that, “ A Person charged in any State with Treason, Felony or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime,” This provision is implemented by section 3182 of title 18 of the United States Code and by the Uniform Criminal Extradition Act (Code Crim. Pro,, § 827 et seq.). Section 829 of the Code of Criminal Procedure makes it the duty of the Governor of this State, upon proper demand from the executive authority of any other State, to have arrested and delivered up to the éxeeutive authority of any other State any person charged in that State with a crime, and who has fled from justice and is found in this State. In the case at bar it is not contended that the demand was not in proper form (cf. Code Crim. Pro., § 830).
While proceedings under the Maryland Defective Delinquency Law and commitment to Patuxent Institution are civil in nature (Roberts v. Director of Patuxent Inst., 226 Md. 643; Purks v. State, 226 Md. 43; Blizzard v. State, 218 Md. 384), both the State and Federal courts in Maryland have held that escaping from that institution is a crime as defined in setion 139 of article 27 of said Annotated Code of Maryland (Caparella v. State, 214 Md. 355 [1957]; Sas v. Maryland, 334 F. 2d 506 [4th Cir., 1964]). Accordingly, relator is substantially charged with a crime under the laws of the State of Maryland and is a fugitive from justice.
Relator contends, however, that where the criminal charge for which extradition is sought is founded upon an underlying civil judgment, the courts of the asylum State must examine the face of the civil judgment and the statutes upon which it is based and, if the underlying civil judgment is found to be unconstitutional, to grant relief.
Section 849 of the Code of Criminal Procedure provides: “ The guilt or innocence of the accused as to the crime with which he is charged may not be inquired into by the governor, or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime.” On the same point see, also, Munsey v. Clough (196 U. S. 364); People ex rel. Samet v. Kennedy (285 App. Div. 1116); People ex rel. Tobin v. Police Commissioner (89 N. Y. S. 2d 15). So also the courts may not consider the question of the sufficiency of the indictment as a pleading (Hogan v. O’Neill, 255 U. S. 52, 56) nor the possibilities resulting from the trial (Drew v. Thaw, 235 U. S. 432), nor the motive and purpose of *346 the extradition proceedings (People ex rel. Higley v. Millspaw, 281 N. Y. 441). Furthermore, the constitutional and statutory rights of a person extradited must be adjudicated in the demanding State (People ex rel. Reid v. Ruthazer, 4 A D 2d 164, affd. 5 N Y 2d 889; People ex rel. Gadson v. Hoy, 285 App. Div. 974, mot. for lv. to app. den. 308 N. Y. 1053, cert. den. 350 U. S. 829; People ex rel. Johnson v. Ruthazer, 198 Misc. 1044, affd. 278 App. Div. 905).
In Drew v. Thaw (235 U. S. 432, supra) the Governor of New • York demanded the extradition of Thaw from New Hampshire where the latter was alleged to be a fugitive from justice. The indictment charged that Thaw had been committed to the Matteawan State Hospital for the insane under a court order and that he conspired to escape from the hospital to the obstruction of justice and the due administration of the laws of New York. The Supreme Court, in an opinion written by Mr. Justice Holmes, reversed an order discharging Thaw on habeas corpus. The court rejected Thaw’s argument, strikingly similar to that of relator in the present ease, that since the commitment proceeding was defective, the subsequent escape did not constitute a crime as it did not tend to obstruct the due administration of the law. Mr. Justice Holmes observed (pp. 439-440): “If there is any remote defect in the earlier proceedings by which Thaw was committed, which we are far from intimating, this is not the time and place for that question to be tried. * * * In extradition proceedings, even when as here a humane opportunity is afforded to test them upon habeas corpus, the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. The Constitution says nothing about habeas corpus in this connection, but peremptorily requires that upon proper demand the person charged shall be delivered up to be removed to the State having jurisdiction of the crime * <:= *. And even if it be true that the argument stated offers a nice question, it is a question as to the law of New York which the New York courts must decide.”
The restricted powers which may be exercised in an asylum State in extradition proceedings reflect the nature of our Federal system and the mutual respect which States must accord each other based on principles of comity. If one State could, prior to proceedings in the demanding State, decide for itself the constitutionality of the other State’s laws, or whether its procedures comported with constitutional requirements, the process of extradition would be jeopardized.
Accordingly, the writ is dismissed and the relator ordered delivered to the custody of the agent of Maryland.