Carol A. COUSINS

v.

Gilbert H. HOOPER.

Supreme Judicial Court of Maine.

Dec. 16, 1966.

Libhart & Cox, by David M. Cox, Brewer, for plaintiff.

Blaisdell & Blaisdell, by H. W. Blaisdell, Ellsworth, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

DUFRESNE, Justice.

The defendant, Gilbert H. Hooper, was arrested upon a justice-of-the-peace warrant issued on plaintiff's accusation and examination in bastardy proceedings under R.S.1954, c. 166, §§ 23 and 24, now 19 M.R.S.A. §§ 251 and 252. He gave bond with sureties conditioned for his appearance at the next term of the Superior Court in and for the County of Hancock to be held on the second Tuesday of September, 1963, and for his abiding the order of the court thereon as ordered by the justice of the peace. R.S.1954, c. 166, § 25, now 19 M.R.S.A. § 253. The bastard child was born on August 8, 1963 and the plaintiff's declaration was filed in the Superior Court on September 5, 1963. The docket entries reveal that the case came to a climax on September 20, 1964, when the Clerk of the Superior Court recorded the following:

"Sept. 20, 1964: Pathologic Report filed.
Sept. 20, 1964: Respondent surrendered before Court and sureties discharged.
Sept. 20, 1964: Order by [Presiding Justice] signed on 9/24/64, filed."

The latter entry had reference to the filiation order in which the facts of the plaintiff's declaration were stated to have been admitted "by default by agreement" and in which the presiding Justice adjudged the defendant as the father of plaintiff's child, charged him with the maintenance of

the child with the assistance of the mother, ordered him to pay future weekly support of $10.00, also the costs of suit, delivery and medical expenses, past support and attorney's fees. The presiding Justice in said filiation decree further ordered the defendant to give a bond in the penal sum of $1,500.00 with sufficient sureties approved by the court or by the Clerk of said court, in term time or in vacation, to the plaintiff, conditioned for the faithful performance of the foregoing order, also to give a bond in the penal sum of $500.00 with sufficient sureties so approved, to the town of Blue Hill in said County of Hancock, conditioned for the maintenance of said child and in default of furnishing said bonds, to be committed to the County Jail in Ellsworth in said County, until said bonds are furnished or he be legally discharged by due course of law.

On May 28, 1965, the plaintiff filed her motion to vacate the docket entry of September 20, 1964: "Respondent surrendered before Court and sureties discharged." The reasons given for the expunction were as follows: "The facts of the case do not warrant such an entry and in fact show that on said September 20, 1964, the Respondent was not in the Superior Court at Ellsworth, in and for the County of Hancock, and further that the sureties mentioned in said docket entry were not in said Court." Service of the motion was made upon Harvard Blaisdell, as attorney for the defendant, Gilbert H. Hooper, by mail. The same Justice of the Superior Court who had signed the previous filiation decree and presumably had authorized the docket entry evidencing the surrender of the principal and the discharge of the sureties granted the plaintiff's motion to strike and under date of July 7, 1965, ordered the Clerk to vacate the docket entries relating thereto. It is conceded by the parties that the court ordered the deletions without receiving any evidence surrounding the circumstances of the alleged surrender. The record is silent as to the reasons for the correction. The defendant appeals.

R.S.1954, c. 166, § 26, now 19 M.R.S.A. § 254, provides for the surrender of the accused or principal by his bondsmen or sureties in manner as follows:

"If at such next or any subsequent term, the complainant is not delivered of her child, or is unable to attend court, or shows other good reason, the cause may be continued. The bond shall remain in force until final judgment, *unless the sureties of the accused surrender him in court at any time before final judgment, which they may do, and thereupon they shall be discharged.* He shall be committed until a new bond is given." [Emphasis supplied.]

The record of surrender which the plaintiff successfully had the court expunge was intended undoubtedly to discharge the defendant's sureties from liability on their bond given in preliminary proceedings to guarantee defendant's appearance in court for trial and to assure his performance of the order of the court therein should the respondent be adjudged the father of the bastard child. It is further conceded that the plaintiff and defendant were represented by attorneys at the time of the entry of surrender on record, but their respective attorneys were not the same as now represent them in these proceedings. The court below was not given the benefit of the original attorneys' version of the circumstances under which the docket entry of surrender was made, as no evidence was presented at the hearing to vacate, unless it be argued that the court relied on its own version of the recollected facts.

But if the presiding Justice decided the motion to vacate solely on his recollection of the facts, [but this does not appear of record] then we are left with no evidentiary record to test the propriety of the decision below. Whether the defendant could have ascertained as a matter of right the facts upon which the court relied and the manner in which it reached its conclusions of law in directing the vacation of the docket entries by requesting the court

within 5 days after notice of the decision to find the facts specially and state separately its conclusions of law thereon under M.R. C.P. 52, we need not decide. Even though the rule says that findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 *or any other motion* except as provided in Rule 41(b), it might be that under the peculiar circumstances of this case, such a request for findings may be proper to address to the sound discretion of the court, in order that the rights of the parties on appeal might be protected.

The defendant however maintains that the presiding Justice had no legal power to correct the docket entry, on the grounds that the bastardy action had come to a final conclusion by the entry of the filiation order and thereafter the parties were out of court and not subject to revision of their rights by correction of the record.

■ The decree of filiation in the instant case adjudicated the paternity of the child and provided all the incidental relief statutorily available to the mother of the child, such as the payment of all expenses incurred in the past and the obligation for future support and for furnishing bonds to secure the court's order and the child's support. It was a full bastardy decree in the usual form. It constituted the final judgment of the court in the bastardy action pending between the plaintiff and the defendant. Goding v. Beckwith, 116 Me. 396, 102 A. 105 (1917); Brett v. Murphy, 80 Me. 358, 14 A. 934 (1888); Corson v. Dunlap, 80 Me. 354, 14 A. 933 (1888); Doyen v. Leavitt, 76 Me. 247 (1884);

■ The plaintiff argues that the defendant was not actually committed to jail for failure to give bond as ordered in the filiation decree and that, so she claims, divests the court judgment of finality. Not so. The enforcement of the judgment is no part thereof. Commitment of the accused in bastardy proceedings is not a pre-requisite to a valid and final judgment. In many cases, undoubtedly, the accused is not available at the time of trial, but has absconded beyond the reach of his sureties to their great grief. The court is not thereby deprived of jurisdiction, but may and does finally adjudicate the issue of paternity on the statutory admission by default. The commitment of a party adjudged to be the putative father of an illegitimate child is usually made at the time of the judgment as a means of enforcing the orders of the court. But compliance with the order of court pre-empts the right of the court to commit the accused. The commitment follows violation of the terms of the judgment and is not a condition precedent thereto. See, McLaughlin v. Whitten, 32 Me. 21 (1850); Hodge & wife v. Hodgdon & others, 8 Cush. 294, (Mass.1851).

■ Where the filiation order was a valid and final judgment disposing of the pending action of bastardy between the parties, the record thereof, unless erroneously or mistakenly made, legally completed the case, and the parties thereafter were out of court and the power of the court over the case and the parties ceased, except for the subsequent enforcement of its judgment. Bubar v. Sinclair, 146 Me. 155, 79 A.2d 165 (1951); Davis v. Cass, 127 Me. 167, 142 A. 377 (1928); Myers v. Levenseller, 117 Me. 80, 102 A. 776 (1918); Shepherd v. Rand, 48 Me. 244 (1860).

■ Docket entries import verity and regularity of procedure. Davis v. Cass, supra; Leathers v. Cooley, 49 Me. 337 (1860). They must be taken as true and control until corrected by the court in which the error occurred. Roberts v. State, 219 Md. 485, 150 A.2d 448 (1959); New York, New Haven & H. R. Co. v. Superior Court, 83 R.I. 292, 115 A.2d 534 (1955).

■ The plaintiff did not seek herein to impeach the filiation order, but obtained correction of the docket entries relating to the surrender of the principal and discharge of the sureties. Statutory surrender in bastardy cases is not a separate action, but

is a proceeding within the bastardy case and if used, must take place in the court having jurisdiction of the bastardy action and only before the final judgment of that court. The judgment of filiation unappealed settles the rights and obligations of the sureties. Goding v. Beckwith, 116 Me. 396, 397, 102 A. 105 (1917). A docket entry of surrender of principal and discharge of sureties, at least from the time the record filiation judgment becomes final, adjudges with finality the rights and obligations of the sureties and has all the features of a final judgment.

■ Did the court below have the power to vacate the docket entry of surrender of principal and discharge of sureties? Let us say initially that, even though, prior to the adoption of our present rules of civil procedure, the court could not entertain a motion to correct the record after a valid and final judgment was recorded, it could nevertheless review the record for error in an independent action such as by writ of error or petition for review. Shepherd v. Rand, 48 Me. 244 (1860); Richards Co. v. Libby, 140 Me. 38, 33 A.2d 537 (1943). In the latter case, our Court said:

"These decisions, however, [decisions such as Davis v. Cass, supra], are not to be interpreted as denying a right of review if the petitioner shows himself entitled thereto under the provisions of the statute creating such right, here R.S., c. 103, § 1, Par. VII. Such review is predicated upon the fact that an adverse judgment has been rendered."

See, former statutory provisions R.S.1954, c. 129, §§ 1–10; c. 123, §§ 1–12.

■ Statutory relief however by writ of error or petition for review was taken away at the time of the adoption of our present rules of civil procedure. See, P.L. 1959, c. 317, §§ 280 and 268. But has the plaintiff brought herself within the terms of Rule 60(b) M.R.C.P. which provides that on motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding? This rule replaces the previous statutory review of final judgments. The presupposed court determination reflected herein by docket entry of "respondent surrendered before court and sureties discharged", followed, as it is here, by the filiation decree properly recorded and unappealed, itself qualifies under the rule as a final adjudication, and whether we call it a final judgment, order or proceeding is unimportant. Under sub-paragraph (1) of 60(b), relief may be had for mistake, inadvertence, surprise, or excusable neglect, and under sub-paragraph (6) for any other reason justifying relief from the operation of the judgment

■ Although our court indicated in Priest v. Axon, 93 Me. 34, 44 A. 124 (1899), that it will not exercise its powers of correction of improvident or erroneous entries of judgments, orders or their equivalents as a means to reverse entries regularly and deliberately entered, however, in the instant case, no evidence was introduced to prove that the entry was occasioned by or the result of mistake, inadvertence, surprise, or excusable neglect or due to any other reason justifying relief. In the instant case, the defendant was represented by counsel, and was actively opposing the motion to vacate. The plaintiff's averments of facts in her motion to vacate must be taken as denied or avoided. Rule 8(d) M.R.C.P.

Whether the mere allegation to the effect that the facts of the case did not warrant the entry on the grounds that in fact neither the defendant nor the sureties were present in the Superior Court at the time of the entry, without any indication as to whether such entry was made under mistake or upon full deliberation, is sufficient pleading under the rule, we need not decide.

■ Whether there was mistake, inadvertence, surprise, or excusable neglect, in connection with the challenged entries, i. e. whether an erroneous record was actually made is a question of fact, and must

be proven by evidence. Bubar v. Sinclair, 146 Me. 155, 79 A.2d 165 (1951); Munsey v. Public Loan Corporation, 151 Me. 17, 116 A.2d 416 (1955). This was not done in this case.

■ There is further reason why the action of the court below as it appears on this record cannot stand. The sureties who on the face of the record entry have been discharged from liability on their bond as a result of the recorded surrender of their principal have not been made parties to the proceedings to vacate the entries. It is apparent that the sureties are persons whose interests will necessarily be affected by the vacation of the docket entries involved. They are therefore necessary and indispensable parties without whom the court will not proceed. The sureties should have been brought on the record by proper service. See, Medico v. Employers' Liability Assurance Corp., 132 Me. 422, 172 A. 1.

The plaintiff, after joining the sureties as parties in the case and upon rehearing, may be able to prove that the questioned entries were made under mistake, inadvertence, surprise or excusable neglect or that they were due to other reasons justifying relief from them. She ought to be given that opportunity, otherwise injustice may result. On the other hand the rights of the sureties have been adjudicated ex parte; their judicial release from liability on bond has been set to naught without evidence and without their day in court. In this, there was error.

The entry will be,

Defendant's appeal sustained. Superior Court's order to the Clerk to vacate the docket entries set aside. Case remanded for further proceedings not inconsistent with this opinion.