# HENRY WEIGHORST *vs*. THE STATE.

Upon an indictment for murder, a verdict "*guilty of murder in the second degree*," without negativing murder in the first degree, is sufficient.

A docket entry, "guilty of murder in the second degree," was set out in the record "guilty of the felony and murder aforesaid, above charged and imposed upon him, and that the said felony and murder is murder of the second degree." HELD:

That both are substantially the same, the latter being but the technical extension of the former, according to the long established practice of the courts.

In legal contemplation, docket entries are made under the eye of the court, and by its authority, and when not properly entered or extended, the error may be corrected.

Where there is but one count, and the party is found guilty of the higher grade of the offence, the inferior grade need not be passed upon by the jury.

The rule by which the sufficiency of a verdict is to be determined, is to ascertain whether it *covers the indictment*.

The act of 1809, ch. 138, does not create a new offence in distinguishing between murder of the first and second degrees. The design was to discriminate in awarding the punishment.

Manslaughter and murder are *different crimes*, and not different *degrees of the same offence*, and hence, on an indictment for murder, and a conviction of manslaughter, the verdict must negative the murder, otherwise the crime charged in the indictment would be left wholly unnoticed.

But, in the case of a conviction of "murder in the second degree," the crime for which the party is indicted is *fully covered* by the verdict.

Such a verdict is in the form required by the act of 1809, ch. 138, because it finds the party guilty of the crime charged against him, and ascertains the *degree* of that crime for the guidance of the court in awarding punishment.

This form of taking the verdict in such cases, has been the almost universal practice for nearly a half century, in all the courts in the State, and such practice is to be recognized as evidence of what the law has been supposed to be from the earliest times.

ERROR to the Criminal Court of Baltimore city.

The plaintiff in error was indicted for the *murder* of his wife, and upon this indictment he was tried, and the jury rendered their verdict, as appears by the docket entry thereof, *"guilty of murder in the second degree."* This entry appears in the record amplified as follows, *" that the said Henry Weighorst is guilty of the felony and murder aforesaid above charged and imposed upon him, and that the said felony and murder is murder of the second degree."*

The prisoner then moved for a new trial, upon the grounds that the verdict was contrary to law, to the evidence and to the weight of evidence, and also because the court erred, 1st, in admitting the dying declarations of the wife as to threats made by the prisoner on the 15th of July, the killing having occurred on the 16th of that month, and 2nd, in admitting the confessions or admissions of the prisoner, alleged to have been made at the watch-house, the State having closed its case, and these alleged confessions not being properly rebutting testimony. This motion the court (STUMP, J.,) overruled.

The prisoner then moved in arrest of judgment, because the jury have not found and answered all the issues confided to them. They have simply found the prisoner guilty of murder in the second degree, and have not negatived murder in the first degree, and manslaughter. This motion the court also overruled, and passed judgment sentencing the prisoner to the penitentiary until the 4th of June 1868, being thirteen years and six months. To correct this judgment the prisoner sued out a writ of error from the Circuit Court for Baltimore city.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Chas. H. Pitts* and *T. Yates Walsh* for the plaintiff in error:

1st. The act of 1809, ch. 138, speaks of murder in the *first degree,* and of the *crime* of murder in the *second degree,*

as *separate* and *distinct* offences. The 4th section says, that "the *offences*" thereinafter named shall be punished as therein prescribed—"1st, every person convicted of *murder in the first degree*" shall suffer death, &c.; "2nd, every person duly convicted of the *crime of murder in the second degree*," shall be confined in the penitentiary, &c.; and "3rd, every person duly convicted of the *crime of manslaughter*," shall also be confined in the penitentiary.

Manslaughter, murder in the second degree, and murder in the first degree, are all *degrees* of *homicide*. In every such indictment, therefore, *homicide* is the subject charged, and murder, or murder in the second degree, or manslaughter, is the *result*. Every such indictment, therefore, presents for the consideration of the jury *three* separate *issues* or *charges*—1st, of murder in the first degree; 2nd, of murder in the second degree; and 3rd, of manslaughter. A verdict which finds the party guilty of any *one of these* inferior degrees, is a verdict which partially convicts and partially acquits, and to be valid, must find specifically *not guilty of the higher* and guilty of the *inferior charge;* and if it merely finds the party guilty of the inferior offence, it will be of no avail. This is the language of *Chitty*, in 1 *Chitty's Cr. Law*, 641, quoted and approved by the Court of Appeals in *State vs. Sutton*, 4 *Gill*, 494, and *acted upon* in the case of *State vs. Flannigan*, 6 *Md. Rep.*, 167, where a verdict finding the party guilty of *manslaughter*, without negativing the murder, was held *invalid*. Manslaughter is just as much, and *no more*, an inferior grade of *homicide* than murder in the *second degree*, and if it be necessary to negative the higher grade in the one case, it must be equally imperative to do so in *the other*. The opinion of the court in *Flannigan's case*, places the case of a conviction of murder in the second degree, without negativing murder in the first degree, as *precisely parallel* with that of a conviction of manslaughter, without negativing murder. The court say, that *each of such convictions* necessarily, in their opinion, *implies* a finding of not guilty of the higher offence, but inasmuch as the practice in England, as stated by Chitty, was so

clearly recognized by the court in the case of *State vs. Sutton*, they felt themselves bound by it, and pronounced a verdict of guilty of manslaughter, which did not *in terms* negative the murder, as *invalid*. We, therefore, consider the very point presented in this case as settled by that decision. In addition to the authorities already cited, we refer to 2 *Wheat.*, 221, *Patterson vs. United States*, and 1 *Mason*, 169, *Stearns vs. Barrett*, for the principle that a verdict cannot be aided by inferences, and for our construction of the act of 1809, ch. 138, we refer to 3 *G. & J.*, 10, *State vs. Dent*, and 20 *Ohio Rep.*, 26, *Wilson vs. The State*.

2nd. The question whether the verdict actually given by the jury is properly set out in the record, arises under the agreement for the amendment of the record. We say the clerk had no right to put into the mouths of the jury language they never used; this record seems to have been made up to meet the point made in *Flannigain's case*, and is not the form in which the verdict should appear. The true form is set forth in 2 *Ev. Harris*, 297. See also 8 *Geo. Rep.*, 208, *Settle vs. Alison*. We say, then, that it is clear, if there is any difference between the verdict rendered and that set out, neither the clerk nor the court had the right to make it, and if there be no difference, the point is not material.

*Charles J. M. Gwinn*, State's Attorney for Baltimore city, for the State, argued the following points:

1st. That the act of 1809, ch. 138, sec. 3, does not alter the crime of murder, as it is known at the common law, *State vs. Dowd*, 19 *Conn.*, 391, *Wharton on Homicide*, 360. Under that act, the proper form for an indictment is for murder, as at the common law. The degrees of murder recognized by the act, are to be found by the jury, if the party is convicted, as a guide to court in the infliction of the punishment only; for without such finding, the court would be uncertain which of the two punishments prescribed for murder it ought to inflict. The language of the act is clear upon this point. It says, "the jury before whom any person *indicted for murder* shall

be tried, shall, if they find such person guilty *thereof, ascertain in their verdict whether it be murder in the first or second degree.*" By this it is clearly shown, that the prisoner is indicted and tried for *murder*, as at the common law, and that the finding of the degree by the jury is but their designation of the greater or less atrocity of the act for which the prisoner is convicted, and is intended as a guide to the court in the punishment. *State vs. Dowd.*

2nd. That this is the true construction of the act, appears from the latter part of the third section of the same act. For it says, "if such person be convicted by confession, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly." If the prisoner pleads guilty, the clerk must enter this general plea on his docket. The court cannot amend it so as to make the prisoner plead differently from his answer. It must proceed to ascertain, not his *crime,* for that he has confessed, but the *circumstances* of his crime, in order to ascertain the measure of his *punishment.*

3rd. In an indictment containing one or more counts charging the same offence, but which offence is by its nature divisible into two charges, the criminal law requires, if the party be convicted of the less offence, that the greater should be negatived; because otherwise the jury does not respond to the whole charge of the indictment, whether it contain one count or many, expressive of the higher charge. For instance, in an indictment for robbery, the jury cannot find the prisoner guilty of larceny, without negativing the force which constitutes the robbery. The reason is, that robbery and larceny are different crimes, and the technical language which describes the former, does not apply to the latter; and *vice versa.* If the jury, in an indictment for robbery, find the prisoner guilty of larceny, but say nothing as to the robbery, the verdict is defective, because it does not respond to the allegation of force contained in the charge of robbery.

4th. But the verdict can only negative one part of a count, or one part of a set of similar counts, when there are words

in the count or counts which are applicable to the offence negatived by the verdict, but inapplicable to the offence which the verdict finds. The verdict cannot negative what the indictment does not charge, any more than it can affirm what the indictment does not state. The indictment in murder does not charge murder in the first degree, or murder in the second degree, but only murder; nor is there any part of an indictment containing a single count for murder, which the jury could negative, if their verdict was for murder in the second degree. All the words describing an offence which may be declared to be murder in the first degree, are necessary to the description of an offence which may be declared to be murder in the second degree. And as the verdict of a jury must respond to the whole indictment, if they said that they found the party not guilty of murder in the first degree, but guilty of murder in the second degree, the first part of their verdict would be an impertinence, because they would have proposed to negative what was not set forth in the indictment itself, and which did not need other negation than was supplied by their finding. See Le Grand's opinion in *State vs. Sutton*, 4 *Gill*, 495.

5th. There is but one view in which this question can be regarded. The degree of the murder which the jury are directed to find, is intended as a direction to the court as to the punishment. If they find the degree, the duty of the jury is performed, not only according to the intent, but according to the very language of the act.

6th. It is proper to argue on behalf of the appellee, that a careful search in the records of the court has demonstrated that it has been the invariable practice of the courts in Baltimore city, since 1809, to take the verdict as it was taken in Weighorst's case.

7th. Nor is the practice confined to the State of Maryland. The law of 1809, in Maryland, in so far as it relates to murder, is a copy of the Pennsylvania statute of 22nd April 1794, secs. 1 and 2. In this last named State the indictments are drawn as for murder at common law, (*Wharton on Homicide*, 387,)

and that the form of verdict recorded in this case is the form used in Pennsylvania, is shown by certified copies of the docket entries produced to this court from the records of the Court of Oyer and Terminer for the city and county of Philadelphia. They were the cases of *Andrew McBride*, in 1852, of *Felix Burns*, in 1852, of *James O'Neill*, in 1853, of *John Martin Rudolph*, in 1855, and of *Joseph P. McKinney*, in 1855. Indeed, no case can be produced from the records of that court, indicating that any other form of verdict has been there known. In addition, the certificate of Chief Justice Lewis, of the State of Pennsylvania, in affirmance of the general practice of the State, is offered as authority higher than that of any text book of practice that could be shown to the court. The practice in Alabama, where the same statute obtains, is also shown by the certificate of the judge of a Criminal Court of that State. The practice in New Hampshire is also shown.

8th. The rationale of the law of murder, in reference to those distinctions, is well set out in *Wharton on Homicide*, 355, 359, 360, 361, and in the case of *State vs. Dowd*, 19 *Conn.*, 391, opinion of Waite, justice. The Connecticut statute being the same with that of Pennsylvania and Maryland.

9th. There is no reason for requiring that a jury should negative manslaughter, when they find a prisoner guilty on an indictment which charges murder. Their duty is to respond to the indictment. If their verdict covers the charge, it is good. *Starkie on Crim. Plead.*, 347. Manslaughter is but unlawful killing—murder is this unlawful killing with a circumstance of aggravation. How would it be possible for a jury to find that the killing was unlawful, and was attended by the circumstance of malice, but that it was not an unlawful killing alone? Do they not find that it was not an unlawful killing alone, when they find the circumstance of aggravation by declaring that the offence is murder? What more could be required?

10th. Nor is there any lack of adjudications in England,

upon points of practice, which are identical with those presented by the case under consideration. Prior to the Stats. 7 and 8, Geo. 4, ch. 29, sec. 2, which abolished the distinction between grand and petty larceny, if the value of the article stolen was uncertain, it was laid as above twelve pence, which was the point of value dividing grand and petty larceny. The indictment was precisely the same in form in either case, except as to the value laid. 2 *Starkie's Crim. Plead.*, 451, *note a.* The punishments for the two offences were different. Grand larceny at the common law being punishable with death, and petty larceny by whipping. 2 *East's P. C.*, 736, *sec.* 134. Yet a party indicted for grand larceny could be convicted of petty larceny; and in case of such conviction, the jury did not negative the grand larceny, but they found the prisoner guilty of petty larceny, by saying in response to the indictment, "guilty, but that the goods are but of the value of ten pence." 2 *Hawk. P. C.*, 620, *sec.* 6. See as to this form of verdict in petty larceny: 2 *Hale's P. C.*, 302. 2 *East's P. C.*, 741, *sec.* 137. *Foster's Cr. Law*, 73. It being a felony, and so charged, whether the value was above twelve pence, or under it, the jury so found by their verdict of guilty, but they proceeded to ascertain the *degree* of the felony as a guide to the court in its punishment.

11th. There is no substantial difference between the finding of the jury, as recorded by the clerk on the docket, and the record as before the court, which would be ground for a diminution, or which would justify the court in correcting the record. The entry of the verdict on the docket, is a minute only made by the clerk for his guidance in making up the record. 2 *East's Pleas of the Crown*, 518. 1 *Chitty's Cr. Law*, 642. If the record is but the true legal amplification of that minute, it is formal, and the court below, or above, cannot interfere with it. The record before the Court of Appeals is that minute in its true legal and technical amplification.

12th. The alleged defect cannot, at all events, be taken advantage of since the act of 1852, ch. 63, sec. 2.

57      v.7

TUCK, J., delivered the opinion of this court.

The plaintiff in error was indicted and tried for murder. The record, as originally transmitted to this court, shows, that the jury found him "guilty of the felony and murder aforesaid, above charged and imposed upon him, and that the said felony and murder is murder of the second degree." It appears, however, by an amendment of the record, that the verdict as rendered and entered on the docket was in these words: "Guilty of murder in the second degree;" and it is contended that this docket entry must be considered as the verdict of the jury, and that the clerk had no authority to amplify their finding, as set out in the record.

It has always been the habit of clerks to take minutes and docket entries of the court's proceedings, and, subsequently, to enter them at length in technical language, according to established forms. This is necessary to the dispatch of business, and relieves these officers from the inconvenient, if not impracticable, labor, of making correct full records of proceedings as they transpire. In legal contemplation they are made under the eye of the court, and by its authority, and, when not properly entered or extended, the error may be corrected. But, in the present case, we do not perceive that there is any substantial difference between the docket entries, and the verdict as set out in the record. One is but the technical extension of the other, according to the long established practice of the courts, and, in disposing of the chief question in the cause—the legal sufficiency of the finding of the jury—we shall not ascribe to the record, as originally transmitted to this court, a greater effect than, by legal intendment, belongs to the verdict as entered on the docket.

The motion in arrest of judgment is founded on the supposition, that the verdict should have acquitted the party of murder in the first degree, and of manslaughter; but we do not understand the latter feature of this motion to be relied on. Where there is but one count the inferior grade of the offence need not be passed upon by the jury. It is sufficient if the finding cover the indictment, and we agree that the

present case must be decided according to this rule. Weig-
horst was indicted for the crime of murder, not for having
committed a homicide. Upon this charge he was convicted,
and the jury, in obedience to the act of 1809, ch. 138, ascer-
tained the degree of that crime. This verdict, though not
subjecting him to the severest penalty, found him guilty of
murder, the crime alleged against him. The act of Assembly
does not create a new offence in distinguishing between
murder of the first and second degrees. The design was to
discriminate in awarding the punishment. The supposed
analogy between a conviction of manslaughter and of murder
in the second degree does not exist. Manslaughter is a
different crime from murder. Although both are within the
general term homicide, yet, legally speaking, they are not
different degrees of the same offence, because one is not mur-
der at all, and, hence, a verdict merely convicting the accused
of that grade of homicide would leave the crime charged in
the indictment wholly unnoticed, in disregard of the nature
and end of pleading, and of the duty of the jury to pass upon
the issues as framed. Besides, if the act of Assembly created
a new offence, it would be necessary, where a party is con-
victed of manslaughter under a count for murder, to acquit of
both degrees of murder, but this is never done. It is suffi-
cient in such cases to say not guilty of the murder, without
negativing each degree of that crime. Again, the act does
not authorize the accused to plead guilty of murder of the
second degree. If he confesses at all he must plead to the
indictment for murder, and it is then made the duty of the
court, "by examination of witnesses, to determine the degree
of the crime, and to give sentence accordingly." It is true
the act does, in awarding punishments, speak of the crime of
murder in the second degree, as if creating an offence before
unknown to our laws; but we think this single expression
must yield to the object and design of the act as indicated by
its other sections.

It is supposed that the present question was settled by this
court, in 6 *Md. Rep.*, 167. We certainly did not intend to

carry the principle recognized by the Court of Appeals in 4 *Gill*, 494, beyond the case then before us for judgment. It is manifest that we yielded to the force of authority in the particular case, not recognizing the soundness of the reason on which the rule was said to have been adopted in England and followed here. We then said, that "where an issue is joined on a single count, involving different grades of homicide, a conviction of manslaughter, or of murder in the second degree, necessarily implies a finding of not guilty of the higher offence," and so we think now. In that case, where the indictment charged one crime, and the party was convicted of another, we held that the practice of taking verdicts in such cases, because sanctioned in *Sutton vs. The State,* should be observed. But where the reason fails the rule is not applicable. The difference between the cases is this. Here the party was convicted of the crime for which he was indicted, though of an inferior degree, and the charge was fully covered by the verdict, whereas Flannigan was indicted for one crime and convicted of another, without any finding as to the offence charged.

But, apart from this view, and conceding that the cases are the same in principle, we think this question is settled by the act of Assembly. A verdict we take to be correctly found when rendered as required by the act. The statute speaks of two degrees of murder, distinguished by the circumstances attending the commission of the crime, according to which the party is to be punished. It first declares what shall be deemed murder of the first degree; and then says: "all other kind of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, (that is of murder,) ascertain, in their verdict, whether it be murder in the first or second degree." The party was convicted of the crime charged against him, and its degree was ascertained for the guidance of the court in awarding the punishment. The act makes no such requirement as to convictions of manslaughter under indictments for murder. These

are left to be rendered as at common law, it having been deemed important, as we may suppose, only in cases of murder to prescribe the form of the verdict.

In conformity with this view of the subject we find, after a careful examination of the criminal records of nearly all the counties, and of the city of Baltimore, made since the argument of this cause, that, with the exception of a few instances, the practice has been to receive, and pass judgment upon, verdicts, after the manner observed in the trial of this party. We recognize the value of precedents and practice, when applicable, not as making the law, but as evidence of what it has been supposed to be since the earliest times. 4 *Taunt.*, 611, (*Ram. on Legal Judgments*, 62.) And, indeed, in Sutton's and Flannigan's cases, the point was ruled on no higher authority than the practice in the courts of England, as stated by Chitty and others. When, for all the time elapsed since the passage of the act under which this party was tried— nearly half a century—we know, that, in trials presided over and conducted by eminent jurists, the same form has obtained, regardless of any supposed similarity between such cases and convictions for manslaughter, why may we not respect their construction of the law as safely as, in other cases, we adhere to the common law practice? If we doubted as to the propriety of the ruling of the court below, according to the principles of law applicable to the point, we should feel great reluctance to disturb or call in question a form of proceeding sanctioned by the practice of our courts for so many years,

*Judgment affirmed.*