JOHN A. SHADE *v.* STATE OF MARYLAND

[No. 735, September Term, 1972.]

*Decided July 11, 1973.*

408

The cause was argued before ORTH, C. J., and POWERS and GILBERT, JJ.

*Howard L. Cardin* for appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Keith Meiser, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The appellant, John A. Shade, was ordered incarcerated for a period of three years following a probation revocation hearing in the Criminal Court of Baltimore. The case against appellant first started on February 17, 1971, when the appellant was convicted of three indictments of lottery violations, Md. Ann. Code Art. 27, §§ 360 & 362, and a violation of *Code of Public Local Laws of Baltimore City* (Everstine, 1969) Art. 19, § 7 (Flash Paper).[1]

On appeal to this Court from the order revoking probation, Shade contends that the order is a nullity because the transcript of the trial of the criminal charges clearly indicates that Shade was never placed on probation. He argues that if there was no probation there could be no violation of that probation, and *ergo,* the hearing judge erred in ordering Shade's confinement.

---

1. This conviction was not made part of the record before this Court.

In order to resolve the issue, it is necessary to examine the transcript of the original trial. That transcript discloses that Shade was sentenced to one year's imprisonment and was fined $1,000.00, with costs, on each of three indictments. On the fourth indictment, which is not before us, see n.1, Shade was fined $250.00 and costs. The following statement by the trial judge then appears:

> "All fines are to be consecutive, and the prison sentences on Mr. Shade are to run consecutively also. *The prison sentence will be suspended for the reasons which I have already stated, upon the payment of fines and costs.*"[2] (Emphasis supplied).

The appellant raises two additional issues, but in view of our disposition, we find it unnecessary to discuss them. We shall confine our tractate to the question of whether *vel non* the hearing judge erred in his finding that the appellant had been placed on probation by the trial court.

"Probation" has been defined in Sutherland, *Principles of Criminology*, (4th ed.) as:

> "... [T]he status of a convicted offender during a period of suspension of the sentence in which he is given liberty conditioned on his good behavior and in which the state by personal supervision attempts to assist him to maintain good behavior."

*See* H. B. Nutter, *Probation in the Criminal Court of Baltimore City*, 17 Md. L. Rev. 309 (1957). *See also* 59 Colum. L. Rev. 311 (1959).

The Maryland Legislature has conferred upon the trial courts the right to impose probation. Md. Ann. Code art. 27,

---

2. The reasons stated by the trial judge were:

"... I don't think that the numbers operation would be extremely discouraged by sending Mr. Shade to jail. I will impose fines and jail sentences, but then under the circumstances, I will not require Mr. Shade to serve any time. It's a type of operation that I ordinarily would, but I am cognizant of the fact that as you say, Mrs. Shade is not in good health, and there are six children in the family."

§§ 639-641A.[3] *See Watson v. State,* 17 Md. App. 263, 301 A. 2d 26 (1973); *Bartlett v. State,* 15 Md. App. 234, 289 A. 2d 843 (1972) *aff'd* 267 Md. 530, 298 A. 2d 16 (1973); *Knight v. State,* 7 Md. App. 313, 255 A. 2d 441 (1969).

At the hearing, appellant's counsel argued that there was nothing in the transcript of the February 17, 1971 trial that showed that appellant had been placed under probation. The judge responded that there was in the record a "carbon copy of a probation order" which states:

> "Ordered by the Criminal Court IV of Baltimore this 17th day of Feb. 1971, that the sentence Three (3) yrs. the Dept. of Correctional Services and fined $3,000.00 and costs in this case be and the same are hereby suspended for a period of Three (3) yrs. from the date hereof, upon condition of good behavior; and subject to the following other conditions: W/O supervision. . . ."

The hearing judge also said:

> ". . . [T]he signed order of probation and the docket entries [4] prevail over any possible omission by the court reporter of that provision."

He further opined that he was "inclined to think" that the failure of the transcript to show a suspension of the sentence upon conditions of good behavior was "an omission." We

---

**3.** Md. Ann. Code art. 41, § 107(f) defines the term, *Probation* to mean:

". . . [T]he conditional exemption from imprisonment allowed any prisoner by suspension of sentence in the circuit court for any county of this State or in the Criminal Court of Baltimore. The condition of any order of probation shall be determined solely by the judge granting the same."

**4.** The docket entry on the first conviction reads as follows:

"Judgment: One (1) yr. c/o Department of correctional Services and fined $1,000.00 and one-half (1/2) costs, sentence suspended, Probation o/c good behavior for three years, pay fine and one-half (¹/₂) costs by 19 Feb., 1971."

Similar entries were made in the docket as to the other lottery indictments except that the sentences and fines were noted to be consecutive to the above quoted disposition.

cannot, however, concur in that opinion. The transcript of the trial, unless shown to be in error, takes precedence over the docket entries, *see Williams v. State,* 7 Md. App. 241, 254 A. 2d 376 (1969),[5] which are presumably made at a later point in time than the taking of a simultaneous transcript.

As long ago as *Weighorst v. State,* 7 Md. 442 (1855), the Court of Appeals observed, at 450:

"It has always been the habit of clerks to take minutes and docket entries of the court's proceedings, and, subsequently, to enter them at length in technical language, according to established forms. This is necessary to the dispatch of business, and relieves these officers from the inconvenient, if not impracticable, labor, of making correct full records of proceedings as they transpire. In legal contemplation they are made under the eye of the court, and by its authority, and when not properly entered or extended, the error may be corrected."

The unilateral perfunctory execution by the trial judge of an "Order for Conditional Suspension of Sentence" may not change the conditions imposed at the time of sentencing, nor does it, *per se,* give rise to a rational inference that the probationer knew of its terms or of its existence. A sentence that is suspended upon the happening of a certain condition cannot, after the condition has been satisfied, be amended so as to increase the nature or extent of the condition, nor may additional conditions be imposed as this would constitute an increase in the sentence.

The only "condition" that we perceive present in the trial judge's suspension of the sentences was the payment of fines and costs. Fines totalling $3,250.00 and costs of $91.75 were paid to the Sheriff of Baltimore City on the day following

---

**5.** *See also Roberts v. State,* 219 Md. 485, 150 A. 2d 448 (1959); *Stockton v. State,* 487 S.W.2d 69 (Court of Crim. App., Texas, 1972); *State v. Rockerfeller,* 9 Ariz. App. 265, 451 P. 2d 623 (1969); *People v. Hymes,* 161 Calif. App. 2d 668, 327 P. 2d 219 (1958); *People v. Shannon,* 110 Calif. App. 2d 153, 241 P. 2d 1007 (1952).

the trial, *i.e.*, February 18, 1971. Thereafter, a report dated February 19, 1971 was sent to the trial judge from the Deputy Director of Probation. The report stated in part:

> "On February 17, 1971 the attached [Order for Conditional Suspension of Sentence] was delivered to the Probation Department. We assumed we had the responsibility to see that Mr. Shade paid the amounts ordered by February 19, 1971, however, Mr. Shade was not brought to the Probation Department at that time. There seemed to be some confusion as to whether Mr. Shade was going to make full direct payment·to the Sheriff's Office or if he would pay through the Probation Department.
>
> On February 19, 1971, a Deputy Sheriff escorted Mr. Shade to us and at that time confirmed that full payment had been received by the Sheriff.
>
> We wish to make Your Honor aware that Mr. Shade had complied with the Order of the Court but that we did not officially open a case in the Probation Department because he had already made full payment prior to our initial contact with him."

We note that there is nothing in the report from the Probation Department that would give rise to a belief that Shade was ever advised that he was on probation for a period of three years. In fact a contrary view is more likely to be supported by the language of the report, which indicates that Shade was not brought to the Probation Department until after the payment of the fines and costs. A case file was not officially opened on Shade by the Probation Department because Shade had "complied with the Order of the Court." [6]

---

6. We are advised that the procedure in Baltimore City following a defendant's being placed on probation, even if it is to be "without supervision" or subject only to payment of fines and costs, is that the defendant is escorted by a deputy sheriff to the Probation Department where he is interviewed and advised of the terms of his probation. He then signs a format that has been stamped on a copy of the Probation Order, thereby acknowledging the terms of his probation. This procedure was not adhered to in the instant case.

We think that in all probability the trial judge did intend to suspend Shade's sentence upon condition of "good behavior" for a period of three years. Irrespective of the judge's intentions, however, the record before us is clear. The only condition actually imposed upon appellant for the suspension of the sentences was that he pay the fines and costs. When that condition was met, on the day following the trial, the sentences of imprisonment were then generally suspended, and the court was without authority to strike the suspended sentence and order Shade's confinement.

We shall, for the reason hereinabove stated, reverse the order revoking probation, and we direct the Clerk of the Criminal Court of Baltimore to correct the docket entries to reflect that the sentence on each indictment, *i.e.*, 6604, 6605 and 6606, Docket 1970, is to be suspended upon payment of the fine and costs.

*Order revoking probation reversed.*

*Costs to be paid by the Mayor and City Council of Baltimore.*