857 A.2d 590

**Troy Arness GATEWOOD**

v.

**STATE of Maryland.**

**No. 3063, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Sept. 8, 2004.

Bradford C. Peabody (Stephen E. Harris, Public Defender, on brief), for appellant.

Zoe Gillen White (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, BARBERA, SHARER, JJ.

SHARER, J.

Appellant, Troy Arness Gatewood, appeals from his convictions on three counts of distribution of cocaine, after a jury trial in the Circuit Court for Cecil County. In his timely appeal, appellant presents for our consideration four issues, which, as recast and reordered, are:

1. Did the trial court abuse its discretion by refusing to disqualify the prosecutor?
2. Did the trial court err in denying appellant's motion to suppress?
3. Did the trial court abuse its discretion in refusing to permit appellant to represent himself?
4. Did the trial court err in the imposition of sentence?

Finding neither error nor an abuse of discretion, we shall affirm the judgments, but shall remand for correction of the docket entries and sentencing documents.

## BACKGROUND

As appellant does not challenge the evidentiary basis for his convictions, we need not dwell on the underlying facts except as they become relevant to our discussion of the issues. *See Craig v. State,* 148 Md.App. 670, 674 n. 1, 814 A.2d 41 (2002), *cert. denied,* 374 Md. 83, 821 A.2d 370 (2003).

The grand jury indictment charged appellant with six offenses, three counts each of possession and distribution of a controlled dangerous substance (cocaine). The case went to trial before a jury, which, on February 3, 2002, returned guilty verdicts on three counts of distribution of cocaine. Appellant was sentenced to 20 years in prison on each count, with the sentences on two counts suspended. Additionally, terms of probation were imposed to commence upon his release from confinement. This appeal followed.

## THE ISSUES

### *1. Did the trial court abuse its discretion by refusing to disqualify the prosecutor?*

The assistant State's Attorney who was assigned to try this case, Christopher J. Eastridge, had previously represented appellant in other cases while serving as an assistant public defender. Appellant, concerned that Eastridge might try to impeach him with convictions in those prior cases, moved for Eastridge's disqualification.

At a bench conference following jury selection and opening statements, defense counsel challenged Eastridge's continued participation in the case, based on the former representation. Responding to questions by the court, Eastridge said that he remembered Gatewood "but ... [had] no specific recollection of a specific case with [him]." The following dialogue was had:

THE COURT: Do you have any knowledge that would in any way be useful to—in this case?

[PROSECUTOR]: No, I do not.

THE COURT: Even if you did have such knowledge is there any way you could get it into this case?

[PROSECUTOR]: Your Honor, none that I know of. I have apprised the court and [defense counsel] as well with regard [ ] all the impeachment convictions upon which the state would be relying. They are of record ... they came me to me through a presentence report that I found in another file in the State's Attorney's Office.

After hearing additional argument, the trial judge denied the defense motion to disqualify:

I understand the defendant's concern. There is no way that I can think of, even if he had any knowledge, that he could get it in, that he would use it. His questions have to be relevant to this case and this case only. The only impeachment information he has is those three, which are a matter of record, theft, robbery that anybody can learn, which are a matter of record. It doesn't make any difference who the prosecutor was....

\* \* \*

That there is no way that can in any way hurt Mr. Gatewood.

Motion is denied.

Following opening statements, defense counsel again raised the issue:

[DEFENSE COUNSEL]: Your Honor, I have one more preliminary matter actually in conjunction with the prior motion I had made about the state's attorney's prior repre-

sentation of Mr. Gatewood. I went back through our electronic records in our office, and just with respect to proffering for the record, it appears that Mr. Eastridge did represent this defendant on at least two cases, both of which apparently ended or closed in '98. One was a— looked like it started out a burglary charge ... which appeared to me to end up in a nol pros pursuant to our records.

And the other one was a ... drug distribution case, which ended up as a plea ... to a conspiracy to possess. We closed it in March of '98. It appears sentencing took place March 16th of 1998.

Again, just to reiterate my argument, I think that those are fairly significant charges, which I believe, regardless of the state's attorney's ability to recollection [sic] independently right now, would have clearly involved some significant contact with the defendant, in preparation of those matters and also in the resolution of the one drug case.

Again, I would ask that the state's attorney be disqualified from prosecuting personally in the matter of Mr. Gatewood.

The prosecutor responded:

[PROSECUTOR]: I have no recollection of either case. Frankly [counsel] had shared that information with me briefly before he offered it to the court. Let me say too, I've been with the P.D. Office from 1986 through 1998, a period of about twelve years, represented hundreds if not thousands of individuals. I really have no recollection of hardly any one. In fact there may be one that will stick out. It's certainly not Mr. Gatewood.

In my current role obviously I can't disqualify myself in each and every case[.] ... I have no recollection of it.

As we discussed earlier, should Mr. Gatewood elect to testify, obviously it's his choice[.] ... If he does testify, I'd like to cross-examine him. Any cross-examination will be limited to the facts of the case; and any impeachment information that's not secret to Mr. Gatewood or his coun-

sel. We've just discussed that already, as well as in chambers at an earlier proceeding in this case.

THE COURT: I do not see any unfair prejudice or any prejudice at all to the defendant[.] I've listened carefully to the question. There is some discussion suggesting there may be something there. [defense counsel], raise it again at that time, and we'll see.

[DEFENSE COUNSEL]: Yes, sir.

Mr. Gatewood did testify, and he was cross-examined briefly:

[PROSECUTOR]: And, Mr. Gatewood, you recall having been convicted on two occasions in 1989 on two separate occasions for theft, is that correct.

[APPELLANT]: Yes, sir.

On cross-examination, neither case in which Eastridge had represented appellant was specifically referred to. Defense counsel did not again raise the issue.[1]

It is important that counsel carefully scrutinize their records for the potential for conflicts from successive representations. The likelihood of such conflicts, it would seem, is greater among those who practice criminal law, for it is not uncommon for defense counsel, both private and public defender, to have been formerly employed as prosecutors. It is also likely that the converse would occur. Although the better practice would be to avoid such situations whenever possible, disqualification is not mandated in all cases.

Although Eastridge could not recall having represented appellant, defense counsel had little difficulty in determining, through a check of records in the Office of the Public Defender after the question arose at trial, that Eastridge had previously represented Gatewood.

---

1. Although defense counsel warned that the prosecutor might inadvertently recall something while cross-examining his client, we have reviewed the cross-examination in question and conclude that counsel's concerns are unfounded. Indeed, the State's cross-examination regarding prior convictions was fairly innocuous.

We reiterate that the decision to disqualify counsel is committed to the sound discretion of the trial court, and should appropriately be judged on a case-by-case basis. Disqualification is not *per se* required in every instance of successive representation. Judge Smith pointed out for the Court of Appeals:

> We hold that the proper action to be taken by a trial judge, when he encounters circumstances similar to those in the case at bar which he determines to be so grave as to adversely affect the administration of justice but which in no way suggest the bringing of a prosecution for improper motives . . ., is to supplant the prosecutor, not to bar the prosecution. Of course, a trial judge *may determine that the facts presented to him are not sufficiently grave to require even this action.* Normally, the evaluation of such circumstances is left to the sound discretion of the trial judge who is upon the scene and able to sense the nuances of that before him.

*Lykins v. State,* 288 Md. 71, 85, 415 A.2d 1113 (1980) (emphasis added).

■ This Court has reinforced the view that successive representation does not require the disqualification of counsel in every instance:

> The mere fact that as a private attorney the prosecutor had once represented appellant in an unrelated case did not, standing alone, result in a conflict of interest such as to disqualify that attorney from acting as prosecutor in the instant case. . . . Nor is there any claim or indication that in investigating or prosecuting the present case the prosecutor made use of any confidential information he *may* have received from the appellant in the prior case. In short, we perceive no error to be corrected, "plain" or otherwise.

*Green v. State,* 49 Md.App. 1, 5, 430 A.2d 1122, *cert. denied,* 291 Md. 775 (1981).[2]

---

2. *See* John Wesley Hall, Jr., Professional Responsibility for the Criminal Lawyer 495 & nn. 66–67 (2d ed.1996) ("mere fact the prosecutor

We now examine whether the trial court correctly ruled that disqualification was not warranted in this case. It is not disputed that Eastridge, while a public defender, represented appellant in other criminal cases.᠂ The salient point in this case is whether the former representation was "in the same or a substantially related matter."

MRPC Rule 1.9, entitled "Conflict of interest: former client[,]" provides:

A lawyer who has formerly represented a client in a matter shall not thereafter;

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 [3] would permit with respect to a client or when the information has become generally known.

MRPC 1.9.[4]

■ We determine as a matter of law whether the prior representation was in a matter that is the same, or is substantially related to, the instant prosecution. *Brown v. District of Columbia Bd. of Zoning Adjustment*, 486 A.2d 37, 52 (D.C. 1984) (en banc).

---

represented the accused in a prior case generally does not require disqualification"). *See generally* Annotation, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused*, 42 A.L.R. 5th 581 (1996 & 2003 Supp.).

3. Rule 1.6 of the Maryland Rules of Professional Conduct addresses the "Confidentiality of information."

4. Comments to MRPC 1.7 advise that "[w]here the conflict is such as clearly to call in question the fair and efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique for harassment." There is no indication that counsel in this case raised this issue in bad faith.

The case law in Maryland on this issue is sparse, *see, e.g.,* *Reed v. Baltimore Life Ins. Co.,* 127 Md.App. 536, 733 A.2d 1106 (1999), but this is a point of law that crosses jurisdictional lines, and rulings from courts that have addressed similarly worded professional conduct rules are relevant. *See Buckley v. Airshield Corp.,* 908 F.Supp. 299, 304 n. 5 (D.Md.1995), *appeal dismissed,* 86 F.3d 1175 (Fed.Cir.1996). *See generally Chrispens v. Coastal Refining & Mktg., Inc.,* 257 Kan. 745, 751–52, 897 P.2d 104, 111–13 (1995); *State v. Hunsaker,* 74 Wash.App. 38, 42, 873 P.2d 540, 542 (1994) (case law from other jurisdictions provides sufficient analytical framework).

The Supreme Court of Kansas has observed:

> There is widespread agreement that conflict questions involving former clients should be resolved through application of the substantial relationship test. However, there is no standard definition of what the test should compare in determining whether there is a close connection between the conflicting representations.

*Chrispens, supra,* 257 Kan. at 751, 897 P.2d at 111 (citing ABA/BNA Lawyer's Manual on Professional Conduct, 51:225). Without adhering to a specific definition, we readily conclude that Eastridge's prior representation of appellant did not involve matters that were substantially related to the prosecution *sub judice.* There is no showing that the facts or circumstances surrounding the previous cases and the present offenses are the same, that the separate events involved the same individuals, or, more importantly, that knowledge that may have been acquired by Eastridge in his earlier role as counsel for appellant would benefit the State five years later in the instant prosecution.

Although "switching sides" in the same case requires disqualification as a matter of course, the Texas Court of Appeals has concluded that disqualification of the prosecutor would not be required where his former representation of the defendant was not in the current case. *Canady v. State,* 100 S.W.3d 28, 32 (Tex.App.-Waco 2002).

In *Cole v. Commonwealth,* 553 S.W.2d 468 (Ky.1977), the Supreme Court of Kentucky rejected a challenge to the prosecutor's involvement where the attorney had represented the defendant 29 years before, although the conviction from that earlier representation would be relevant to Cole's status as an habitual offender. That court's observation is relevant to the case *sub judice:*

> The Commonwealth's Attorney acquired no confidential information when he defended Cole 29 years previous to this trial which he could have been used in the case at bar. The existence of the prior conviction ... was a matter of public record. Thus, there was no conflict of interest so as to disqualify the Commonwealth's Attorney.

*Cole, supra,* 553 S.W.2d at 472.

In *State v. Kalk,* 234 Wis.2d 98, 608 N.W.2d 428, 2000 WI App. 62 (Wis.Ct.App.2000), a similar conclusion was reached by the Wisconsin Court of Appeals:

> Even apart from the trial court's credibility and fact-finding determinations, the record in this case otherwise fails to support Kalk's claims that [the prosecutor] had an actual conflict of interest or that Kalk was prejudiced. The 1987 case and the instant case were wholly separate and discrete from each other. The events were unrelated and were separated by an eleven-year period. The victims and the witnesses were different. The trial court expressly found that "[the prosecutor] never derived any information from [the 1987 case] ... which was used in any way to charge, prosecute or convict the defendant." Thus, [the prosecutor] was not operating under any competing loyalties in his prosecution of this case.

*Kalk,* 234 Wis.2d at 108, 608 N.W.2d at 432, 2000 WI App. 62 at ¶ 20. *See also Williams v. State,* 278 Ark. 9, 13, 642 S.W.2d 887 (1982) (proof of prior conviction only; no use of confidential information); *United States v. Bolton,* 905 F.2d 319, 321 (10th Cir.1990), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991).

Our review of the record and the arguments of the parties satisfies us that Eastridge's former representation of Gatewood was not in a matter that is "substantially related" to the case *sub judice,* and we hold, on those facts, that his role as appellant's former counsel in an unrelated matter did not require his disqualification. According to the Comment to Rule 1.9:

> The scope of a "matter" for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

*Comment,* Rule 1.9.

Eastridge's current representation cannot "be justly regarded as a changing of sides in the matter in question." The trial court did not abuse its discretion in refusing to disqualify the prosecutor.

While we shall affirm the trial court's exercise of discretion in this matter, we emphasize that the better course would be to ascertain potential conflicts before trial, and substitute counsel where appropriate. This approach is consistent with the Comments to Rule 1.7 of the Maryland Rules of Professional Conduct (MRPC), which in part provides that "resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation." Comment, MRPC 1.7. An important principle for a lawyer's ethical responsibility in such matters has been well articulated by a federal district court:

> A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer. He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship. Related to this principle is the rule that where any substantial relationship can be shown between the subject matter of a former representation and that of a

subsequent adverse representation, the latter will be prohibited.

*T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D.N.Y.1953) (footnote omitted), *aff'd,* 216 F.2d 920 (2d Cir.1954).[5]

### 2. Did the trial court err in denying appellant's motion to suppress?

Before trial, Gatewood moved to suppress the pre-trial identification of his photograph by Trooper Stan Wilson, who chose appellant's photograph from an array of six pictures. We discern no error on the part of the circuit court.

Detective William Wadsworth, assigned to the drug enforcement unit of the Elkton Police Department, was an investigating detective when police conducted a controlled buy of narcotics from appellant on April 25, 2002. He recounted that Trooper Wilson acted as an undercover drug buyer as part of this investigation, in which the police set up a video surveillance of the transaction. Wadsworth testified that while Wilson was seated in a car, police filmed appellant engaged in the controlled transaction as he stood beside the trooper's vehicle.

Gatewood was not arrested that day. Instead, police returned to the Cecil County narcotics task force office to review the video tape. Wadsworth scanned the tape to locate the transaction in question. As appellant appeared on the screen, Wilson pointed to him, describing him as "the person who sold

---

**5.** We hasten to note that this is not an academic exercise. The Arizona Supreme Court imposed a 90-day suspension on a prosecutor in a "serial representation" context, finding that the former and current cases were substantially related and the prosecutor had been disciplined before. That court observed:

One of the aims of ER 1.9 [identical to MRPC 1.9] is to protect the client. *See* ER 1.9 comment. Respondent's conduct in prosecuting Mr. Otto created a substantial danger that confidential information revealed in the course of the attorney/client relationship would be used against Mr. Otto by respondent, his former attorney. Although respondent claims that he does not remember the content of any such confidential communications by Mr. Otto, the protection of the rule should not be so lightly cast aside.

*In re Ockrassa,* 165 Ariz. 576, 578, 799 P.2d 1350, 1352 (1990).

me the crack cocaine." Wadsworth identified appellant as a person whom he recognized from prior contacts. Using a law enforcement software program that is designed to select, from the videotape, still pictures for photo arrays, Wadsworth prepared a six-person array to show Wilson a few days later. He recalled:

[DETECTIVE]: When I prepared the lineup I printed it out onto ... printer paper. The next day I then presented it to Trooper Wilson, handed it to him and he went directly to Mr. Gatewood's picture, said, "That's the person that sold me the CDS," circled it, signed his name, dated it and put the time down.

[PROSECUTOR]: You didn't point out any pictures or say anything with regard to a subject when you presented that to him?

[DETECTIVE]: That's correct.

On cross-examination, Wadsworth recalled that after the April 25 transaction, the officers who made up the narcotics investigation "team" convened at the Elkton police station, and Wilson and he reviewed the videotape. Wilson, who recounted his prior experience with appellant, recognized Gatewood from the videotape. After the screening, Wadsworth began the process of creating a photo array. He said nothing to Wilson at the time.

The array was due to be shown on April 29. Prior to that time, however, Wadsworth contacted Wilson about the photographs:

[DEFENSE COUNSEL]: ... [D]oes that refresh your recollection about whether, in fact, before the time that you met with Trooper Wilson to show him the photo lineup you contacted him about that lineup?

[DETECTIVE]: Yes. That I had the lineup prepared, yes.

[DEFENSE COUNSEL]: And did you indicate to him that you had put together a lineup and you believed that you knew who it was that had sold him the cocaine?

[DETECTIVE]: I indicated that I believed I knew who it was but he had to make the final I.D.

Wadsworth then described how he used the computer program to create a list of names that met criteria and characteristics most similar to the suspect, a list from which he made the final selection.

Counsel argued that the identification procedures were unduly suggestive, first, because there was insufficient similarity between appellant's photograph and those of the others in the array and, alternatively, that the contacts between Wadsworth and Wilson prompted the latter to choose appellant's photograph from the array.

■ The circuit court first addressed the argument that Wadsworth prompted the identification.

THE COURT: Actually what he said was he thought he knew the identity, Wilson would have to make the final I.D.

[DEFENSE COUNSEL]: Right. Exactly.

THE COURT: But what that implies is I know the identity and I put it in the lineup. I don't know. Didn't say that. I think I know the identity. What I'm thinking about is this, let's take your argument and think it through. If we are going to leave out what I think is patent logic that a police officer is not going to show a photo array to somebody for I.D. that does not include at least one photo that he thinks is the guy, let's assume that he's going to or that it would be accurate or proper police procedure. Okay. The actual testimony we have here is Wadsworth said he thought he knew the identity. He doesn't say I think I know the identity and I'm putting it in the array. If it's proper police procedure and maybe even a standard of police conduct that you might show him an array that doesn't have it in there just to check him and then maybe show him another one that has it in there or not tell him which one you think it's in or whatever ... if that's your thinking, then how is it prejudicial to say I think I know the identity? If they are police officers and that's the standard I think I know the identity doesn't mean I'm going to put the identity in, does it?

[DEFENSE COUNSEL]: Well, I think that's implicit in the nature of the conversation between the two of them.

THE COURT: Exactly. I think it's implicit in the whole procedure. I think I know the identity and I'm not stupid enough to waste my time by not putting it in the array.

[DEFENSE COUNSEL]: ... What I'm trying to say is that the studies that have looked into this thing indicate that when you tell somebody you think you got the guy in this array you are going to get more false identifications ...

THE COURT: Has the Court of Appeals or the Supreme Court said it's impermissibly suggestive if you say I think I know the identity but you have to point him out?

[DEFENSE COUNSEL]: I can't cite the Court a case with that specificity, no, I'm not aware of such a case.

THE COURT: Or is there such a case ... that says if you even suggest that it's in the array that that's impermissibly suggestive? I understand what you are saying about psychological behavior and you will get an identity more often if you tell them you think it's in there, but the question is has the requisite authority said that's impermissibly suggestive?

[DEFENSE COUNSEL]: Not that I'm aware.

Declining to suppress the identification, the circuit court ruled:

THE COURT: Okay. I have thought through what [counsel] has argued in regard to the array and probed it a little bit to try to push it out to its logical extremes and, of course, the standard is not perfection, the standard is constitutionality. The constitutionality standard is, is it impermissibly suggestive. As far as I can see on this photo array which I'm looking at, it's six human beings that are all males, that are all black, that are all about the same age, that are all about the same size. No. 6 I don't know whether the photo—whether the camera was closer to his face when the picture was taken or whether he is really heavier than the others. He might be. But I can't see looking at that they are—that Mr. Gatewood stands out so distinctly that it's impermissibly suggestive. I noticed as

soon as I looked at Mr. Gatewood's picture that he is scowling. He looks like he's not very happy in the photo. And No. 3 looks like he's not too unhappy. But I just can't see anything about it that's so distinctive and so outstanding about Mr. Gatewood necessarily that a person would necessarily pick Mr. Gatewood out of this lineup.

So I cannot find that there really is anything impermissibly suggestive about it, so the motion is denied.

 " '[D]ue process protects the accused against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures.' " *McDuffie v. State*, 115 Md.App. 359, 366, 693 A.2d 360 (1997) (quoting *Moore v. Illinois*, 434 U.S. 220, 227, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977)). Our inquiry follows two steps. The accused, in his challenge to such evidence, bears the initial burden of showing that the procedure employed to obtain the identification was unduly suggestive. *Thomas v. State*, 139 Md.App. 188, 208, 775 A.2d 406 (2001), *aff'd*, 369 Md. 202, 798 A.2d 566 (2002); *Loud v. State*, 63 Md.App. 702, 706, 493 A.2d 1092, *cert. denied*, 304 Md. 299, 498 A.2d 1185 (1985). Should this showing be made, the State must then prove, by clear and convincing evidence, that the independent reliability in the identification outweighs the "corrupting effect of the suggestive procedure." *Thomas, supra*, 139 Md.App. at 208, 775 A.2d 406. *See generally Manson v. Brathwaite*, 432 U.S. 98, 105–07, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

 The scope of appellate review of a trial court's disposition of a motion to suppress is well established. "Our review of an order [deciding] a motion to suppress evidence is ordinarily 'limited to the evidence presented at the suppression hearing.' " *Carter v. State*, 367 Md. 447, 457, 788 A.2d 646 (2002). We view the evidence and inferences that may be reasonably drawn therefrom in a light most favorable to the prevailing party on the motion, *Cartnail v. State*, 359 Md. 272, 282, 753 A.2d 519 (2000), and will uphold the motions court's findings unless "they are clearly erroneous." *Carter, supra*, 367 Md. at 457, 788 A.2d 646. "[We] must make an indepen-

dent constitutional evaluation," however, "by reviewing the relevant law and applying it to the unique facts and circumstances of the case." *Id.*

Having reviewed the record under that standard, we hold that the trial court did not err in finding that the procedures employed to secure the identifications by Wilson were not impermissibly suggestive.

First, we reject the contention that Wadsworth effectively prompted Wilson's choice of appellant's photograph from the array. We are mindful, as was pointed out by Justice Harlan in *Simmons v. United States,* 390 U.S. 377, 383–84, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), that "[t]he chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." (footnote omitted). Each case must nevertheless be judged on its own facts, *id.* at 384, 88 S.Ct. 967, and the facts before us do not depict a "photographic identification procedure [that] was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* Wadsworth said he knew who the suspect was, most likely suggesting that person's photograph was in the array. Nevertheless, he left it to Wilson to select the photograph of the person who had sold him drugs in a controlled narcotics buy. We also believe that the circuit court was entitled to consider that Wilson could reasonably expect that the array shown to him would have contained a suspect.[6]

---

6. The United States Court of Appeals for the District of Columbia Circuit, in a case involving an allegedly suggestive lineup procedure, observed that

> Law enforcement personnel should avoid telling a witness that a definite suspect is in a lineup but it is not absolutely impermissible. ... It must be recognized, however, that any witness to a crime who is called upon to view a police lineup must realize that he would not be asked to view the lineup if there were not some person there whom the authorities suspected.

*United States v. Gambrill,* 449 F.2d 1148, 1151 n. 3 (D.C.Cir.1971). Although the lineup procedure is less likely than a photo array to suffer from this tactic, *see id.,* we are confident that Judge MacKinnon's

We turn to appellant's assertion that the array itself was unduly suggestive. Engaging in our independent appraisal of the photo array in question, *see Mendes v. State,* 146 Md.App. 23, 39, 806 A.2d 370, *cert. denied,* 372 Md. 134, 812 A.2d 289 (2002), we are satisfied that appellant's features are not so distinctive as to render the array impermissibly suggestive. Each of the six men in the array are African–American. All are similarly complected. Each has minimal facial hair. None have observable facial features, such as tatoos, scars, or birthmarks. In sum, their features are remarkably similar. This similarity in features is critical. *See McGrier v. State,* 125 Md.App. 759, 766, 726 A.2d 894, *cert. denied,* 355 Md. 613, 735 A.2d 1107 (1999).

In the final analysis, we conclude that the identification procedures were not impermissibly suggestive, and shall affirm the motions judge's denial of appellant's motion to suppress Wilson's identification.

### 3. Did the trial court abuse its discretion by refusing to allow appellant to represent himself?

Despite appellant's assertion to the contrary, we note at the outset that the trial court did not refuse to permit appellant to represent himself. We discern no abuse of the trial court's discretion in the handling of appellant's changing position about his trial counsel. Hence, we shall not disturb the court's ruling.

Before trial, appellant told the court that "I talked to my lawyer ... I informed him that I wouldn't be needing him to represent me because my family's going to hire a paid attorney[.]" Appellant explained that counsel and he did not "see eye to eye on a lot of things[.]" He claimed that he had discharged the same attorney in a prior case. After considerable discussion, and some advice from the court about the

observation applies as well to procedures such as that before us *sub judice. See generally State v. Bolden,* 196 Neb. 388, 391–92, 243 N.W.2d 162, 164, (1976) (citing cases); *State v. Gregory,* 630 S.W.2d 607, 608–09 (Mo.App.1982) (lineup).

benefit of counsel, and a warning that the case would not be continued, defense counsel was discharged and appellant allowed to proceed *pro se*. After being instructed about *voir dire* procedure, Gatewood had second thoughts and agreed to rehire his trial counsel.

During trial, after the State had examined Wadsworth, defense counsel asked for a bench conference to announce that appellant again wanted to discharge him. Appellant questioned what he characterized as counsel's deficient conduct of cross-examination. The trial court was not convinced:

THE COURT: Look, as far as I can see [counsel's] asking proper questions; he's made objections.

[APPELLANT]: I gave him questions to ask the questions.

THE COURT: Just because he's overruled on them doesn't mean he is not doing his job. The request is denied.

[APPELLANT]: I asked him questions—he's supposed to do what I am ask him, right?

THE COURT: He's supposed to conduct the trial in your best interest. He seems to be doing it, whether you realize it or not. The request is denied.

The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. *Johnson v. State*, 355 Md. 420, 442–43, 735 A.2d 1003 (1999). *See also State v. Wischhusen*, 342 Md. 530, 537, 677 A.2d 595 (1996). The Court of Appeals recently emphasized the well-established principle that "the Sixth Amendment to the United States Constitution grants the accused not only the right to be represented by counsel, but also the right to make his own defense *without* the assistance of counsel." *Gregg v. State*, 377 Md. 515, 548, 833 A.2d 1040 (2003) (citing *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)) (footnote omitted). *See Parren v. State*, 309 Md. 260, 262–63, 523 A.2d 597 (1987).

Maryland Rule 4–215 governs the procedures to be observed in cases where an accused purportedly waives his or her right to representation by counsel. The Rule also applies when a defendant wishes to discharge his attorney and pro-

ceed *pro se.* Yet the Court of Appeals in *State v. Brown,* 342 Md. 404, 676 A.2d 513 (1996) has observed that "the right to proceed pro se is limited after trial has begun." *Id.* at 417, 676 A.2d 513. Appellant's insistence that the procedures dictated by this Rule must also apply during trial is without merit, for, as Judge Thieme has pointed out for this Court, "the Court of Appeals has made it very clear that where the *trial has already commenced,* as is the case here, Rule 4-215 *does not apply." Sutton v. State,* 139 Md.App. 412, 431, 776 A.2d 47, *cert. denied,* 366 Md. 249, 783 A.2d 223 (2001) (emphasis in original) (citing *Brown,* 342 Md. at 428, 676 A.2d 513).

We must therefore review the trial court's actions for abuse of discretion, *Brown, supra,* 342 Md. at 420, 676 A.2d 513 (citing cases) and, having done so, discern no actions by the trial court that offend this standard, or that would dictate a reversal of appellant's conviction. Under the totality of the circumstances, we are satisfied that the trial court gave due consideration to appellant's complaints, yet found them unwarranted.

We note that, just prior to trial, the court had been emphatic in its advice that representation by counsel was important, and had outlined the advantages of the assistance of an attorney. After granting appellant's wish to represent himself, the trial court then readily allowed counsel to reenter the case when appellant had second thoughts. Although the trial court's discussion with appellant later in the trial concerning his renewed concern about counsel was more perfunctory than earlier, we are unable to conclude that, given the context of this record as a whole, the trial court's conduct of the matter was an abuse of discretion.

### 4. Did the trial court err in the imposition of sentence?

#### The Sentences

We finally turn to the sentencing issue presented in this appeal. Appellant challenges his suspended sentences as they are indicated on the docket, commitment, and probation

records, asserting that the latter sentences were intended to be concurrent with the 20 year sentence imposed for the conviction of Count 1. He claims that the docket and commitment entries are incorrect, because they conflict with the sentencing court's pronouncement of sentence from the bench. He concludes his argument by suggesting that, based upon the sentences imposed by the court, the imposition of a period of probation was in error and ought to be vacated.

In taking up appellant's argument, we have reviewed the transcript of the sentencing phase of the trial to determine the trial court's actual words, as contrasted with the entries made in the commitment order, the clerk's docket entries, the sentencing guidelines worksheet, and the order for probation. Specifically, the documents reflect that appellant was sentenced as follows: Count 1–20 years incarceration; Count 3–20 years, consecutive to Count 1, but suspended; and Count 5–20 years concurrent to Count 3.

When imposing sentence, the court said:

THE COURT: All right. That's a high sentencing guideline with an overall guideline range of 36 years to 60 years. Given the facts of this case, although those are serious offenses I do not believe it warrants a sentence within that range of 36 to 60 years. I do, however, believe that it's such a serious offense, it warrants a substantial sentence.

So with respect to the conviction for distribution of cocaine on April 25, 2002, it's the judgment of this court that the defendant be committed to the Division of Corrections for a period of twenty years.

As to the conviction for distribution of cocaine on May 14, 2002, the sentence is twenty years, but that sentence is suspended.

As to the conviction for May 17th, 2002, the sentence is twenty years concurrent and suspended.

That takes it below the guidelines, takes into consideration the defendant's problems, but also at the same time recognizes the seriousness of the offense so that—how long has the defendant been in custody on these charges?

[DEFENSE COUNSEL]: There—your Honor, there was a bail posted in this case which was revoked on 10–21–02. I calculate from that date to today, 106 days.

THE COURT: Do you agree with that?

[PROSECUTOR]: I will accept that, your Honor.

THE COURT: The defendant's given credit for 106 days.

Upon release from incarceration he's back on probation for a period of five years. Conditions of that probation will be ...

Appellant, citing this Court's decisions in *Jackson v. State,* 68 Md.App. 679, 515 A.2d 768 (1986), *Nelson v. State,* 66 Md.App. 304, 503 A.2d 1357 (1986), and *Shade v. State,* 18 Md.App. 407, 306 A.2d 560 (1973), insists that because the sentencing court did not specify that his suspended sentence for Count 3 should be consecutive to the sentence for Count 1, the docket and commitment records to that effect are in error. He seeks the construction of his two suspended sentences (Counts 3 and 5) as being concurrent with the sentence for Count 1.

The State, while conceding that "the docket entries and commitment record may not be correct in showing the suspended sentence on Count Three as consecutive to Count One[.]", posits that it does not matter because the sentence for Count 3 was suspended and, therefore, can be neither concurrent nor consecutive to the sentence for Count 1.

We believe that the appellant has the better of the argument. We have stated that

[w]hat the trial judge did must be gleaned from the judgment entered, *i.e.,* from the sentence imposed.... The transcription of the pronouncement of the sentence in open court and its entry on the court docket are the objective and tangible manifestations of the judgment, which constitute notice, not only to the accused, but to all interested parties. Therefore, the determination of the terms of the judgment ordinarily and necessarily involves review of the transcript of the proceedings and of the docket entries.

Although the docket entries "... are made under the eye of the court, and by its authority ..." *Weighorst v. State,* 7 Md. 442, 450 (1855), when there is a variance, "[t]he **transcript of the trial, unless shown to be in error, takes precedence over the docket entries**...." *Shade [v. State,* 18 Md.App. 407, 411, 306 A.2d 560 (1973)].

*Jackson v. State,* 68 Md.App. 679, 687–88, 515 A.2d 768 (1986) (emphasis added).

■ It is clear, then, that the sentence announced from the bench for Count 3 was suspended generally and that the sentence for Count 5 was concurrent and suspended. Because of the court's pronouncement that the sentence for Count 3 was suspended, without having spoken the word "consecutive", the sentence is, perforce, concurrent. There is a presumption that if the court does not specify that a subsequently imposed sentence is to be consecutive to an earlier imposed sentence, the latter is concurrent. *Nelson, supra; Collins v. State,* 69 Md.App. 173, 196–99, 516 A.2d 1015 (1986); *Nash v. State,* 69 Md.App. 681, 691, 519 A.2d 769, *cert. denied,* 309 Md. 326, 523 A.2d 1013 (1987).

## The Probation

■ Maryland Code Ann., Crim. Proc. § 6–221 permits the court to suspend the execution of a sentence and place a defendant on probation on such conditions as the court considers proper. When, however, no part of the execution of a sentence is suspended, the imposition of a period of probation is without effect. The Court of Appeals, faced with a similar issue in *Costello v. State,* 240 Md. 164, 167, 213 A.2d 739 (1965), said: "[I]n its original sentences ... the trial court gave definite terms of confinement, no part of which were suspended. Absent a suspension of sentence, the language as to probation had no meaning...." Therefore, because no part of any of the three sentences imposed by the court was effectively suspended, the order for probation is of no effect.[7]

---

7. Of course, our ruling will have no effect on any condition that may be imposed upon appellant should he be released on parole, or released on mandatory supervision.

The net effect of the sentencing is that appellant has received three concurrent 20 year sentences, no part of which was suspended. We shall remand with directions to the clerk to make the appropriate docket entries, to amend the commitment order, and to strike the order for probation. In all other respects, the judgments of the circuit court are affirmed.

**CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY WITH DIRECTION TO AMEND THE DOCKET ENTRIES AND COMMITMENT ORDER, CONSISTENT WITH THIS OPINION, AND TO STRIKE THE ORDER FOR PROBATION; JUDGMENTS AFFIRMED IN ALL OTHER RESPECTS. COSTS TO BE PAID BY APPELLANT.**